## Ruttledge *v.* Kress, Appellant.

*Mines and mining—Quarrying on another's land—Treble damages—Act of May 8, 1876, P. L. 142.*

The Act of May 8, 1876, P. L. 142, imposing treble damages upon any person mining or digging out " any coal, iron or other minerals, knowing the same to be upon the lands of another," applies to the act of digging and carrying away building stone from an open quarry on the surface of the ground.

Argued April 22, 1901.   Appeal, No. 84, April T., 1901, by defendant, from judgment of C. P. No. 3, Allegheny County Nov. T., 1896, No. 886, on verdict for plaintiff in case of Frank I. Ruttledge v. William Kress.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Affirmed.

Trespass quare clausum fregit.   Before KENNEDY, P. J.

At the trial it appeared that the plaintiff was the owner of a piece of unimproved land in the eighteenth ward of the city of Pittsburg.   The defendant owned adjoining land upon which he operated an open stone quarry.   The evidence for the plaintiff tended to show that the defendant went over his line and quarried and removed about 500 perches of stone on the plaintiff's land.

The court charged in part as follows:

[The defense is, first, with reference to the claim made for stone taken out of plaintiff's premises.   The defendant admits that he did quarry stone upon the property of the plaintiff; he admits that he got over the line in operating this quarry, but he says the amount quarried was very inconsiderable; according to his estimate it was not over some forty or fifty perches of stone, which, at the estimate prices given would be some $30.00

or $40.00.  That, he claims, is all he is liable for in this action. That amount he admits he is liable for, although he says he ought not to pay more than what that stone was worth in place. Because while he did quarry it from the premises of the plaintiff, he claims that he did not remove it therefrom, but finding that he had made this mistake he let the stone remain there, and says it is there to this day, that he has not removed it, and hence would only be liable for that amount of stone at about ten cents a perch, its value in place.  That amount would be some $3.00 or $4.00.  He goes further and says that even if he is liable for the value of the stone, after it is removed, it would only amount to some $40.00 or $50.00, and that he is not liable in treble damages because he did not knowingly take the stone from the plaintiff's land; that it was a mistake.  He claims to have shown by the testimony that he was sick at the time this stone was taken out, at the time this mistake was made, and that the taking was not wilful or knowingly done on his part, and therefore he is liable only for the value of the stone.]  [1] If he has satisfied you by the evidence that it was not taken knowingly upon his part, he is only liable for the value of the stone.  [If you are satisfied that the stone is still there for Mr. Ruttledge, then he is liable only for the value of that stone in its place, which would be some ten cents a perch.  But if mined, and removed, and converted to his own use, knowing it to be the property of the plaintiff, then he is liable, not only for the value of the stone so taken, but three times its value. [2] Those are questions for your determination.  The defendant claims further, in answer to the claim of the plaintiff for stone, that the encroachment upon other parts of the property of the plaintiff was all done prior to the purchase of the property by the plaintiff.  He admits the trespass, or getting over his line, and quarrying the stone at this one point; but as to these other places, where it is claimed by the plaintiff that the defendant encroached on his property and mined and removed the stone therefrom, the defendant says it was all done prior to the purchase by the plaintiff of his property.  If you should find that to be the case, the defendant is not liable to the plaintiff for the stone so quarried and removed.  The plaintiff claims that the defendant quarried and removed stone all along the dividing line between him and the defendant, and that he took

and removed the stone from hiš property. So you are to deter-
mine how much stone was quarried and removed by the defend-
ant from the plaintiff's property, and the value of that stone.
[And you must determine also whether or not that stone was
taken out wilfully or knowingly by the defendant. If it was
not, then he is only liable for the actual value of the stone so
taken or so quarried. If he quarried it and removed it and con-
verted it to his own use, knowing it to be the property of the
plaintiff, then he is liable for three times the value of that
stone. [3]

Verdict and judgment for plaintiff for $1,500. Defendant
appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*C. C. Dickey*, of *Shiras & Dickey* and *Thomas B. Alcorn*, for
appellant.—The court held that common stone was a mineral
within the meaning of the act of 1876, thereby giving to this
highly penal statute a mosc liberal construction. This we con-
ceive to be error: Dunham & Shortt v. Kirkpatrick, 101 Pa.
36 ; Gibson v. Tyson, 5 Watts, 34; Erwin's App., 20 W. N. C.
278; Kemble Iron Co. v. Scott, 15 W. N. C. 220; Darvill v.
Roper, 3 Drewry, 294; Tucker v. Linger, L. R. 21 Ch. Div.
18; Iron Silver Mining Co. v. Cheesman, 116 U. S. 529.

The rule noscitur a sociis applies here. The words " other
minerals " follow the word " iron," and we submit means other
minerals of the nature of iron, metal or metallic ore : Bucher v.
Commonwealth, 103 Pa. 528; Com. v. Giltinan, 64 Pa. 100.

A penal statute must be construed strictly, and must not be
extended beyond the evident intention of the legislature ex-
pressed on its face: Gallagher v. Neal, 3 P. & W. 183; Bucher
v. Commonwealth, 103 Pa. 528; Commonwealth v. Giltinan,
64 Pa. 100 ; Andrews v. United States, 2 Story, 203 ; Schooner
Enterprise, 1 Paine's C. C. Rep. 32; United States v. Heth, 3
Cranch, 399; East Union Twp. v. Ryan, 86 Pa. 459; Marshall's
Lessee v. Ford, 1 Yeates, 195; Senser v. Bower, 1 P. & W.
450; Helffenstein v. Thomas, 5 Rawle, 209; Chase v. Curtis,
113 U. S. 452.

*E. J. Kent*, for appellee.—The language of the act is not am-
biguous. It is very clear and distinct in its meaning. But the

legislature, lest it might be misunderstood, and the scope and effect of the act too much narrowed, changed the general words, " or other minerals," of the first part of the act into the words of a still more general and broader signification in the latter part of the act, and used the words " or other materials," and it cannot be successfully argued in contradiction, that the word " materials " is not a much more general term, and a term of much broader and more inclusive meaning than the word " minerals."    Webster's definition of " material " is as follows : " matter, substance ;  the substance or matter of which anything is made or to be made : " Hilton's App., 116 Pa. 351 ; Hartwell v. Camman, 10 N. J. Eq. 128 ; Earl of Rosse v. Wainman, 14 M. & W. 869 ;  Midland Ry. Co. v. Checkley, L. R. 4 Eq. Cases,  19 ;  Bell v.  Wilson, L. R. 1 Ch. App. 303 ; Mickleth-wait v. Winter, 6 Exch. Rep. 644;  Act of April 20, 1869, P. L. 76 ;  Yocum v. Zahner, 162 Pa. 475.

OPINION BY BEAVER, J., July 25, 1901 :

In order to reach a proper conclusion in the present case, it will be well to keep prominently in mind the evident intent of the legislature and the dominant thought in the law which we are called upon to construe.    From the time when, under the Levitical code, the Levites said " Cursed be he that removeth his neighbor's landmarks, and all the people said amen," down to the present time, the boundaries of the habitations and possessions of men have been the object of the law's jealous solicitude and care.

The 3d section of the Act of March 29, 1824, P. L. 152, provides : " That, in all cases where any person, after the first day of September, shall cut down or fell or employ any person or persons to cut down or fell any timber tree or trees growing upon the lands of another, without the consent of the owner thereof, he, she or they so offending shall be liable to pay to such owner double the value of such tree or trees so cut down or felled ; or, in case of the conversion thereof to the use of such offender or offenders, treble the value thereof, to be recovered with costs of suit by action of trespass or trover, as the case may be, and no prosecution by indictment shall be any bar to such action."    The Act of May 8, 1876, P. L. 142, is evidently intended to protect the owners of lands in the enjoy-

ment of their own property by imposing the same penalties for the removal of material below the earth's surface as provided by the act of 1824, supra, in regard to the cutting of timber trees. The gist of both acts is the trespass upon the lands of another and the object of both evidently is to preserve inviolate the boundaries of adjoining owners of lands. Inasmuch, however, as it is more difficult to determine the boundaries beneath the soil than above it, the act of 1876 requires the trespass to be done knowingly.

The only question presented for our consideration in this case is whether or not the provisions of the act of 1876, supra, apply to the digging, quarrying and carrying away of stone from an open quarry. The language of the act is: "That, if any person or corporation shall mine or dig out any coal, iron or other minerals, knowing the same to be upon the lands of another person or corporation, without the consent of the owner, the person or corporation so offending shall be guilty of a misdemeanor, and being thereof convicted, shall be sentenced to pay such fine not exceeding $1,000 or to such imprisonment not exceeding one year as the court in their discretion may think proper to impose; and the person or corporation so offending shall be further liable to pay to such owner double the value of the said coal, iron or other materials so mined, dug out or removed, or in case of the conversion of the same to the use of such offender or offenders treble the value thereof, to be recovered with costs of suit by action of trespass or trover as the case may be, and no prosecution by indictment under this act shall be a bar to such action." It is conceded that stone, of whatever character, is a mineral and that, although the act might apply to fire clay, which is a species of rock and dug from under the surface of the ground, it does not apply to building stone dug or carried away from an open quarry on the surface of the ground, and this, upon the ground, as argued by the appellants, " that penal statutes are enacted to regulate the conduct of the bulk of humanity, not merely the actions of men of science. The words of such statutes are, therefore, to be interpreted in the sense in which the bulk of humanity could understand them." And, as authority for this position, we are referred to Dunham et al. v. Kirkpatrick, 101 Pa. 36, and numerous cases of like character, in which the courts construed the terms of a grant

of all minerals contained in a deed and in which it was held that the grant was to be construed according to the understanding of the parties, which would be based upon the generally accepted meaning of the term "minerals." But we are not construing a grant and the reasons which govern in the construction of deeds, leases, etc., do not apply in the construction of an act of assembly. The main object of the act under consideration, as of that of 1824, evidently was to preserve the boundaries of adjoining landowners inviolate and the reason for the law applies as fully in the case of digging or quarrying and carrying away limestone, granite or any other building material from an open quarry as in digging, mining and carrying away stratified iron ore, fire clay or other minerals under the ground. A quarry is defined to be "an excavation or other place from which stone is taken by cutting, blasting or the like, usually distinguished from a mine from being widely open at the top and front." To quarry is "to cut, dig or take from, as from a quarry." When we consider, as is matter of common knowledge, that some of the most valuable anthracite coal mines are, after the earth is stripped therefrom, surface mines, and that the great mass of the hematite iron ore mined in Pennsylvania is taken from the surface, the distinction between surface mining and underground mining loses its significance. If surface clay, which contains iron or aluminum were taken away from the land of another for the purpose of using the minerals therein contained, there can be no doubt that the trespasser would be liable under the terms of this act to the penalties therein provided. Under the contention of the appellant, iron ore mined from the surface of the ground would be within the provisions of the law, while limestone, an equally necessary constituent element in the manufacture of metallic iron, would not. Upon what principle can such a distinction be justified or sustained?

The testimony is not printed and we assume that the trespass was committed knowingly and that the defendants were liable, under the terms of the act, to the imposition of treble damages, as they were held to be by the trial judge in the court below. All the specifications of error relate to the one question. The case was carefully tried and reconsidered on an argument on the motion for a new trial. It does not appear that the liability, under the act of 1876, was denied at the trial.

The question was considered, however, on the argument for a new trial and is fairly raised by the assignments of error. Regarding it as the main object of the act and the intention of the legislature to preserve inviolate the boundary lines between adjoining owners, we have no difficulty in reaching the conclusion that the act applies to open quarries or mines as well as to those which are underneath the surface of the ground. Indeed, it would seem as if the act should apply with greater force in the former case than in the latter, for it is much more easy to ascertain where a boundary line is upon the surface of than underneath the ground.

Judgment affirmed.

W. W. PORTER, J , dissents.