# Hendler, Appellant, *v.* Lehigh Valley Railroad Company.

*Railroads—Taking of material for construction—Minerals—Sand—Act of May 8, 1876, P. L. 142—Treble damages.*

A railroad company cannot be charged with double or treble damages under the Act of May 8, 1876, P. L. 142, for taking common mixed sand for grading and construction purposes, from land over which the company has the right of way.

Such sand is not a mineral in the commercial sense intended by that act.

Argued April 12, 1904.   Appeal, No. 40, Jan. T., 1904, by plaintiff, from order of C. P. Luzerne Co., March T., 1903, No. 276, overruling exceptions to report of referee in case of Joseph Hendler v. Lehigh Valley Railroad Company.   Before MITCHELL, C. J.; DEAN, FELL, MESTREZAT and POTTER, JJ. Affirmed.

Exceptions to report of Rush Trescott, Esq., referee.

The facts appear by the opinion of the Supreme Court and by the report of Hendler v. Lehigh Valley Railroad Company, Appellant, ante, p. 256.

*Errors assigned* were in dismissing exceptions to referee's report.

*F. M. Nichols* and *F. C. Sturges*, for appellant, cited:

Griffin v. Fellows, 81* Pa. 114; Com. v. Hipple, 7 Pa. Dist. Rep. 399; Rutledge v. Kress, 17 Pa. Superior Ct. 490.

*Stanley Woodward*, of *Woodward, Darling & Woodward*, for appellee.

OPINION BY MR. CHIEF JUSTICE MITCHELL, May 23, 1904:

This is a cross appeal from the same judgment as in No. 280 of January term, 1903, see ante, p. 256. The only question in the present appeal is the right of the plaintiff to double or treble damages under the Act of May 8, 1876, P. L. 142.

The language of the act is: " If any person or corporation shall mine or dig out any coal, iron or other minerals, knowing the same to be upon the lands of another person or corporation, without the consent of the owner, the person or corporation so offending shall be guilty of a misdemeanor, . . . . and the person or corporation so offending shall be further liable to pay to such owner, double the value of the said coal, iron or other materials so mined, dug out or removed, or in case of the conversion of the same to the use of such offender or offenders, treble the value thereof to be recovered with costs of suit, by action of trespass or trover."

The learned referee applying the test of the popular understanding of the word " mineral " found that the sand which was the subject of the suit not being within such understanding was not reserved by the grantor and therefore sustained the plaintiff's right of action for defendant's carrying it away. On the same line of reasoning he further held that sand was not a mineral within the act of 1876 and therefore refused to award plaintiff either double or treble damages. As between the present parties, a different but equally short cut leads to the same conclusion. The plaintiff is the grantee of the defendant by a deed wherein the latter reserved " all coal and other minerals in, under and upon " the land. If the sand in question was a mineral, it was reserved by the grantor, and the plaintiff did not own it. If on the other hand it was not a mineral there could be no double or treble damages under the statute.

The various meanings of the word " mineral " have been considered in the other branch of this case (ante, p. 256). What was there defined as the commercial sense of the word, to wit:

a substance of mineral nature having sufficient value separated from its situs as part of the earth, to be mined, quarried or dug for its own sake, or its own specific uses, is clearly the sense in which it is used in the act of 1876.

The act is highly penal, both in its criminal and civil aspects and therefore must be strictly construed. Its intent was to give protection to a species of property peculiarly liable to invasion in a new or sparsely settled country, a wrong frequently difficult to discover and for which the only common-law remedy by action of trespass was inadequate. It continues in the same line the policy of the Act of March 29, 1824, P. L. 153, giving double or treble damages against any person cutting down timber trees on the lands of another; and sec. 152 of the crimes act (March 31, 1860, P. L. 382) making the same thing a misdeameanor punishable with fine and imprisonment. And in the same line are the acts of April 9, 1869, June 2, 1870, and June 11, 1879, imposing penalties on setting fire to waste, wild or timber lands, barrens or moors. The object in all such legislation was the same, to give a more effective remedy than the action of trespass, by making the wrong not only a misdemeanor punishable criminally, but by giving the injured party full reparation in the way of fixed exemplary damages.

In the present case the defendant appears to have taken the sand under claim of full ownership, and even though that be not sustained, nevertheless under some circumstances and for some uses, such as construction, repair or maintenance of its road through plaintiff's land, the defendant had a clear right to take it. The statutory trespass which incurs the punitive damages is the mining or digging of the minerals " knowing the same to be upon the lands of another." It is doubtful if the case in any aspect is within the definition of the offense.

But however that may be, it is clear that under the findings of the learned referee the sand in question was not a mineral in the commercial sense, or within the terms of the act. To take the word in any other sense would not only be giving a penal statute a very loose rather then a strict construction, but would lead to manifest absurdity. In its broad sense contended for by appellant the word mineral includes all kinds of earth, as well as water, and if so construed the taking of a shovelful

of earth from a neighbor's land, or a bucket of water from his well would be a criminal offense under the statute. No such drastic application of its words was within the intention of the legislature, and the intention is as mandatory a consideration in the construction of a statute as of a contract.

Appellant has cited two cases, but neither of them contains anything repugnant to the view we have expressed. In Com. v. Hipple, 7 Pa. Dist. Rep. 399, Judge McPHERSON instructed the jury that sand was a mineral within the act of 1876. As we have said in the other branch of this case (ante, p. 256) sand according to the circumstances may or may not be a mineral in the commercial sense, intended by the statute. The report of Com. v. Hipple is very brief and there is nothing to indicate that in the facts in that case the sand was not shown to have been dug and carried away for its own specific use or value and so brought within our construction of the statute.

In the other case, Ruttledge v. Kress, 17 Pa. Superior Ct. 490, the Superior Court held that building stone was a mineral within the statute, and taking it even from an open quarry entitled the owner to recover treble damages. This was in exact harmony with out present decision.

Judgment affirmed.