## Dunham and Shortt *versus* Kirkpatrick.

A reservation by the grantors in a deed of "all minerals" does not include petroleum oil. The grantors may not, therefore, by virtue of such reservation, enter and take petroleum oil. If they do they are liable in trespass.

May 23d 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Warren county :* Of January Term 1882, No. 462.

Trespass quare clausum fregit, by James Kirkpatrick against C. Dunham and Alfred Shortt, for entering and boring for petroleum oil, and for cutting timber upon the plaintiff's premises. Plea, not guilty.

[Dunham and Shortt *v.* Kirkpatrick.]

The following case stated was submitted for the opinion of the court :

The plaintiff is the owner of one hundred and ten acres of land, more or less, being the south part of tract No. 109 in Meade township, Warren county, Pa., which he purchased from E. G. Wood and others, by article of agreement, dated Dec. 5th 1870, and in pursuance of which he immediately took possession, and has remained in possession ever since.   On Nov. 8th 1881, A. B. Butterfield and E. L. Butterfield, in whom the legal title of the original vendors had become vested, conveyed the same land to the plaintiff in pursuance of the agreement, the purchase money having been paid in full.

In the article of agreement, and also in the deed, was inserted the following clause :   "Excepting and reserving all the timber suitable for sawing ; also, all minerals ; also, the right of way to take off such timber and minerals."

On or about Feb. 1st 1881, the defendants entered upon said land, erected a derrick and engine house, and drilled an oil well thereon, from which they have continually taken oil up to this date, to wit, March 28th 1882.

On or about the same time the defendants, by their agents, also entered upon said land and cut down certain trees, and converted them into firewood and other forms, and used them in their business, said trees not being suitable for sawing timber.

The defendants claim by virtue of a lease for oil purposes from the said E. L. Butterfield and A. B. Butterfield, dated Dec. 15th 1880.   About the time of the first entry by defendants, to wit, March 7th 1881, a written notice was served upon C. Dunham, one of the defendants, by plaintiff. The said article of agreement, dated Dec. 5th 1870 (marked " Exhibit A "), the deed referred to (and marked " Exhibit B "), the notice above mentioned (marked " Exhibit C "), are hereto attached, and admitted to be duly executed and served as above.   The lease to defendants (marked " Exhibit D "), is also attached and admitted to be duly executed.

The value of the firewood and timber, not sawing timber, taken by defendants is agreed to be fifteen dollars.   The value of the oil taken is $757.50, including interest to March 27th 1882.   This includes all oil taken up to and including March 25th 1882.

The above facts are submitted for the opinion of the court with the same effect as if found by special verdict.   If the court shall be of opinion that by the article of agreement and deed (Exhibits " A " and " B "), the petroleum oil, with the right to take it, was excepted or reserved, then judgment to be entered for the plaintiff for $15.   If the court shall be of opinion that the oil was not reserved or excepted by said

agreement and deed, then judgment to be entered for the plaintiff for $772.76, interest to be added in either case from March 25th 1882.

### Exhibit A.

Mead, December 5, 1870.—Agreement made and entered into the fifth day of December, A. D. 1870, between E. G. Wood & Co., of Mead Township, Warren County and State of Penna., of the one part, and James Kirkpatrick of the same place of the other part, witnesseth, that the said E. G. Wood & Co., in consideration of the sum of one hundred and fifty dollars now paid and one hundred and eighty dollars to be paid in two equal installments, with interest on the same, doth grant, bargain and sell to the said James Kirkpatrick, his heirs and assigns, all that piece of land situated in Mead Township, Warren County and State of Penna., bounded as follows: It being the south portion of lot No. 110, beginning at the south-east corner of the whole tract, thence north seventy-three and four-tenths rods to a stake, thence west two hundred and forty rods to a beech tree, thence south seventy-three and four-tenths rods to the south-west corner of the whole tract, thence east along the south line of said tract two hundred and forty rods to the place of beginning, containing one hundred and ten acres of land, excepting and reserving all the timber suitable for sawing; also all minerals; also the right of way to take off such timber and minerals.

And the said parties hereby bind themselves, their heirs, executors and administrators, for the performance of all and every of the above agreement, as witness their hands and seals the day and year first above written.

E. G. Wood & Co.,    [L. s.]
James Kirkpatrick,    [L. s.]

Signed, sealed and delivered in the presence of

J. M. Wood.

Received December 5, 1870, of James Kirkpatrick one hundred and fifty dollars, the first payment above mentioned.

Received April 9, 1874, axe handles to the value of (62⅔ doz.) one hundred dollars on the within.

$169$\frac{12}{100}$.  Received Warren, Pa., Nov. 23, 1881, of James Kirkpatrick, by hand of C. H. Noyes, one hundred sixty-nine and $\frac{12}{100}$ dollars in full for the balance of purchase-money due on the within contract.          E. L. Butterfield,

A. B. Butterfield,
By E. M. Clapp,
J. K. Palmer,
Their Attorneys.

[Dunham and Shortt v. Kirkpatrick.]

The following is an extract from the deed containing the reservation and exception, dated Nov. 8th 1881 :

"To the place of beginning, containing 110 acres of land, excepting and reserving all the timber suitable for sawing, also all minerals, also the right of way to take off such timber and minerals, being the same land described in a contract between E. G. Wood & Co. and the said James Kirkpatrick for the sale of the above described land, dated the 5th day of December, A. D. 1870, and by mistake therein designated as being in lot No. 110. This deed is now made in pursuance of said contract."

The court, after argument, entered judgment for the plaintiff for $773.66, filing the following opinion :

Whether the plaintiff is entitled to recover for the oil taken, depends on the true construction of the exception and reservation in the article of agreement from E. G. Wood and others, and the deed made by the Butterfields in pursuance of such agreement.

The words in the article of agreement and also in the deed are, "excepting and reserving all the timber suitable for sawing ; also all minerals; also the right of way to take off such timber and minerals." Is or is not petroleum included in the exception "all minerals?" The case stated gives no extraneous, illustrative facts. We are left to determine the intention and meaning of the parties solely from the terms of the writings. If the terms used are free from ambiguity there is nothing for construction to do. The expressed stipulations of the parties must not be defeated, even to reach their supposed intention. "A contract which the parties intended to make, but did not make, cannot be set up in the place of one they did make, but did not intend to make." But a word may be used in its most comprehensive sense, or in a restricted one—in a popular and common sense, or in a scientific, technical or peculiar one. That the word "minerals" in its most comprehensive signification includes petroleum, is probably an accurate statement. It is said to be a mineral in the case of Funk v. Haldeman, 3 P. F. Smith 229 ; Appeal of Stoughton et al., 7 Norris 198; but the question remains, did the parties to the agreement and deed, recited in the case stated, use the word in the enlarged or in a restricted sense ?

That they did not use it in its most comprehensive sense appears quite certain, for if they did we have the somewhat singular business transaction of an agreement to convey, and a deed of conveyance of land with an exception and reservation to the grantor of at least all the substances which form any part of the solid body of the land, both external and internal, and which are destitute of animal or vegetable life. It does not seem reasonable that so large a reservation was intended, and hence we

are led to the conclusion that the words "all minerals" were used in a restricted sense. "The best construction," says C. J. GIBSON, in the Schuylkill Nav. Co. *v.* Moore, 2 Wharton 491, "is that which is made by viewing the subject of the contract as the mass of mankind would view it, for it may be safely assumed that such was the aspect in which the parties themselves viewed it."

In Robertson *v.* French, 4 East 135, it is said that written instruments "must be construed according to the sense and meaning as collected in the first place from the terms used, which terms are themselves to be understood in their plain, ordinary and popular sense, unless by the known usage of trade or the like they have obtained or acquired a meaning distinct from the popular meaning of the same words."

Does the plain, ordinary and popular sense, that sense in which the mass of mankind understand the term "minerals," include petroleum? We think not. In Gibson *v.* Tyson, 5 Watts 34, the reservation was "all mineral." One question was whether a hard substance called chrome, of a very considerable commercial value and related to iron in some of its properties and properly classified as a mineral, was included in the ordinary and common acceptation of the word. In delivering the opinion Judge KENNEDY says : "But it has been objected that according to the ordinary and common acceptation of the term mineral, chrome is not included within the exception, because, although properly a mineral, yet not being a metallic substance, it is not considered by the great mass of mankind as a mineral, and embraced within that term. This objection would certainly have great weight, and perhaps could not be overcome, were it not for the parol evidence and the facts established by it." In that case the parol evidence showed very clearly that the term "mineral" was introduced into the exception for the express purpose of embracing the chrome, without which it would not be included in the common acceptation of the term ; at least such appears to be the opinion of Judge KENNEDY.

We are of the opinion that the words "all minerals," used in the exception and reservation in the article of agreement and the deed mentioned in the case stated, do not, in common and ordinary meaning, include petroleum.

April 3rd 1882. Judgment is entered on the case stated in favor of the plaintiffs, and against the defendant, for the sum of seven hundred and seventy-three dollars and sixty-six cents ($773.66).

The defendant thereupon took this writ of error, and filed the following assignments of error :—

1. The court erred in entering judgment in favor of the plaintiffs and against the defendant for the larger sum, to wit, $773.66, instead of the smaller sum, to wit, $15, on the case stated.

[Dunham and Shortt v. Kirkpatrick.]

2. The court erred in that part of their opinion in which they say, "We are of the opinion that the words 'all minerals,' used in the exception and reservation in the article of agreement and the deed mentioned in the case stated, do not in common and ordinary meaning include petroleum."

3. The court erred in that part of the opinion in which they say, "And hence we are led to the conclusion that the words 'all minerals' were used in a restricted sense."

*Wm. M. Lindsey* and *R. Brown* (with them *Johnson* and *Parmlee*), for the plaintiff in error.—There can be no doubt of the fact that petroleum oil is a mineral. It is classified as a mineral by mineralogists and geologists (see Hooker's Mineralogy and Geology, Dana's Geology, and other standard works), and is said to be a mineral by this court in the case of Funk *v.* Haldeman, 3 P. F. Smith, page 229, Appeal of Stoughton *et al.*, 7th Norris, page 198, and other cases. There is nothing in the language of the contract and deed to indicate that the parties used the term in a restricted sense; on the contrary, the word used with the term is one of enlargement—"all minerals" making it as comprehensive as it can be made. The reason given by the learned judge for finding that the parties used the term in a restricted sense is that the term "mineral," in its most comprehensive sense, would include "all the substances which form any part of the solid body of the land," &c. But that is not the form in which it is used. The parties to this contract and deed use the words "all minerals" in the plural, which includes the different species or classes of minerals—those minerals which are the subject of mining operations. If they had used the term "mineral," or "all mineral" there might possibly be some reason for saying they meant all mineral matter, including everything not organic. But when they use the words "all minerals" in the plural, they thus speak of the subject of the reservation in classes, and presumably mean all minerals which are classified as such and are the subject of mining operations. Petroleum is classed as a mineral, and is the subject of mining operations. In the reports of the Geological Survey of the state of Pennsylvania, the mineral products of the state are classified as follows: "Petroleum, coal, natural gas, building stone, flagstone, building brick clay, fire clay, limestone, iron ore, mineral paint, and mineral water:" Book R, page 79. Petroleum is thus placed at the head of the mineral products of the state. On what principle of construction can it be said that the parties used these words "all minerals" in a restricted sense, that would not include one of the most prominent mineral products of the

state? If we say the parties used the term in a restricted sense, where shall the line be drawn? To what shall we restrict the exception or reservation? Shall it be to metallic ores? That would be restricting the words "all minerals" to a very narrow limit, and would exclude all the most valuable mineral products of the state except one, to wit, iron ore. It is safe to presume that the parties had in view the minerals common to the locality where they live, and the one most prominent and valuable, which is petroleum. No other mineral of any importance is found in Warren county. Counsel for plaintiff, in the court below, conceded in his argument that the term minerals as used by the people in general would include coal. If it includes coal, then why not petroleum, which is of like origin, and much more extensive in that part of the state? In nearly all the leases throughout the oil region we find the grant of the right to "mine and excavate for petroleum or rock oil," and we find it referred to as "petroleum, carbon or rock oil and other minerals." We talk about "boring and mining for oil," and refer to oil leases as "mining leases." And this court has declared oil to be a mineral: Appeal of Stoughton *et al.*, 7 Norris 198. "Oil, however, is a mineral, and being a mineral is part of the realty. In this it is like coal or any other natural product which *in situ* forms part of the land."

The legislature also has treated petroleum oil as a mineral: Act of May 1st 1861, P. L. 438.

If the definition of the word by the standard dictionaries is any indication of the sense in which it is used by the mass of mankind, then the term as used by the people in general includes petroleum, and if we are to take the definition of the legal authors it certainly includes petroleum: Webster; Worcester; Walker; Bouvier Law Dict.; Bainbridge on Mines and Minerals. We think the learned judge erred in coming to the conclusion that "the common or popular sense, that sense in which the mass of mankind use the word," does not include petroleum.

*Noyes* (*Wetmore* with him), for the defendant in error.—No definition of the term "minerals" that would include petroleum oil would exclude natural gas, mineral water, brick clay, mineral paint, mineral pitch, &c. Yet in the popular sense none of these are included among "minerals," but only those mineral substances which are solid, permanent, and can be dug or mined for. Petroleum oil, though in one sense a part of the land, in another sense is not, for it is not fixed or located; it flows under the land from and to adjoining lands, and a well on one man's land draws oil underlying his neighbors' lands as

[Dunham and.Shortt *v*. Kirkpatrick.]

well as under his own. The operations to produce it require the use or destruction of the surface of the land, by reason of the necessary derricks, tanks, engines, pipes, and by leakage; but when a grantor reserves mining rights he cannot so use and destroy the surface land unless he expressly stipulates therefor: Heart *v*. Gill, 7 L. R. Ch. 699. Petroleum oil was not known to exist in Warren county when this reservation was made. If the definition of the term were doubtful, the reservation must be construed most strongly against the grantor: Butler *v*. Gardiner, 8 Johns. 394; Duryea *v*. New York, 62 N. Y. Rep. 592.

Mr. Justice GORDON delivered the opinion of the court, October 2d 1882.

The reservation in the agreement of December 5th 1870, between Wood & Co. and Kirkpatrick, is of "all timber suitable for sawing, also all minerals." The defendants, who claim under a lease from the vendors, in the agreement above stated, contend that it is their right, under the reservation, to enter upon, and take from, the premises in said agreement described, all the petroleum, or mineral oil, that may be found therein. This contention can be sustained only under the hypothesis that the word "minerals" in the reservation includes petroleum. The court below refused to sustain the interpretation put upon the agreement by the defendants, and entered judgment, on the case stated, for the plaintiff. In this we think it was right. The whole argument used for the purpose of convincing us that this decision is not correct is based on the allegation that petroleum is a mineral. It is true that petroleum is a mineral; no discussion is needed to prove this fact. But salt and other waters, impregnated or combined with mineral substances, are minerals; so are rocks, clays and sand; anything dug from mines or quarries; in fine, all inorganic substances are classed under the general name or minerals: Bou. L. Dic.; Wor. Dic.; Dana's Geology; Grey's Botany. But if the reservation embraces all these things, it is as extensive as the grant, and therefore void. If, then, anything at all is to be retained for the vendor, we must, by some means, limit the meaning of the word "minerals." But the rule by which this may be done is well stated by Chief Justice GIBSON in the case of the Schuylkill Navigation Co. *v*. Moore, 2 Wh. 477, as follows: "The best construction is that which is made by viewing the subject of the contract as the mass of mankind would view it; for," continues the learned chief justice, "it may be safely assumed that such was the aspect in which the parties themselves viewed it." So, Mr. Justice KENNEDY, adopting this same rule, in the case of Gibson *v*. Tyson, 5 Watts 34, when construing an exception

[Dunham and Shortt *v.* Kirkpatrick.]

in a deed " of all mineral or magnesia of any kind," says, that by the bulk of mankind nothing is considered as a mineral except such things as be of a metallic nature, such as gold, silver, copper, lead &c., and that in looking at the deed before him, under the general understanding, he would have hesitated about classing chromate of iron as a mineral, except that, from the parol testimony, it appeared the parties themselves regarded it as a metallic ore of some kind. But if a doubt was raised as to the popular classification of the chromate of iron, a well known mineral, what shall we say of oil, which is regarded, even by science and law, as a mineral only because of its inorganic character, or, as in Stoughton's Appeal, 7 Nor. 198, because of its forming part of the freehold from which it is taken? Certainly, in popular estimation petroleum is not regarded as a mineral substance any more than is animal or vegetable oil, and it can, indeed, only be so classified in the most general or scientific sense. How, then, did the parties to the contract under consideration, think and write? As scientists; or as business men, using the language and governed by the ideas of every-day life?

As we have before observed, if this reservation is to have a strictly scientific construction it is as extensive as the grant, hence, works its own destruction; on the other hand, if we adopt the popular understanding we cannot regard petroleum as a mineral. Moreover, we may be very sure that when Wood & Co. made their contract with Kirkpatrick, they did not intend to reserve the mineral oil that might afterward be found in the land, otherwise that intention would have been expressed in no doubtful terms. They were, doubtless, at that time unaware of the character of the property as oil territory. But if they did entertain such an idea, and expected to reserve oil under the general term "mineral," they were mistaken, and should have known that they were using that word in a manner not sanctioned by the common understanding of mankind, hence, in a manner that could not be approved by the courts of justice.

The judgment is affirmed.