John E. and Mary Josephine
BUTLER, Appellees

v.

CHARLES POWERS ESTATE et al.,
William H. Pritchard and Craig
L. Pritchard.

Appeal of William H. Pritchard
and Craig L. Pritchard.

Superior Court of Pennsylvania.

Submitted May 9, 2011.

Filed Sept. 7, 2011.

Laurence M. Kelly, Montrose, for appellants.

Michael J. Giangrieco, Montrose, for appellees.

BEFORE: STEVENS, P.J., GANTMAN, and FITZGERALD *, JJ.

OPINION BY GANTMAN, J.:

Appellants, William H. Pritchard and Craig L. Pritchard, heirs to the estate of Charles Powers, appeal from the order entered in the Susquehanna County Court

_____

* Former Justice specially assigned to the Superior Court.

of Common Pleas, sustaining the preliminary objections of Appellees, John E. Butler and Mary Josephine Butler, and dismissing Appellants' request for declaratory judgment. For the following reasons, we reverse and remand for further proceedings.

The relevant facts and procedural history of this case are as follows. Appellees are the owners in fee simple of two-hundred and forty-four (244) acres of land in Apolacon Township, Susquehanna County, Pennsylvania. Appellees' deed to the land contains the following exception reserving:

> [O]ne half the minerals and Petroleum Oils to said Charles Powers his heirs and assigns forever together with all and singular the buildings, water courses ways waters water courses rights liberties privileges hereditaments and appurtenances whatsoever there unto belonging or in any wise appertaining and the reversions and remainders rents issues and profits thereof; And also all the estate right, title interest property claimed and demand whatsoever there unto belonging or in any wise appertaining in law equity or otherwise however of in to or out of the same....

(Complaint to Quiet Title, filed 7/20/09, at 7–8) (citing reservation in a deed in the chain of title to the 244 acres at issue, from the Estate of Charles Powers to Patrick Fitzmartin, recorded October 25, 1881).

On July 20, 2009, Appellees filed a complaint to quiet title, naming the defendants as Charles Powers' estate, and the estate's heirs and assigns. Appellees alleged ownership of the land in fee simple, and ownership of all "minerals and petroleum oils" based on adverse possession. On July 21, 2009, Appellees filed an affidavit stating that the identity and whereabouts of the defendants, their heirs and assigns, are unknown; and filed a motion for publication. That same day, the court granted Appellees' motion for publication. On September 18, 2009, Appellees filed a motion for judgment because the defendants failed to file an answer or any other pleading. The court scheduled a hearing for September 22, 2009. Appellants surfaced, and Appellees subsequently filed a motion for a continuance. The court continued the hearing until October 27, 2009. On October 26, 2009, Appellees filed another motion for continuance. On October 27, 2009, Appellants filed preliminary objections claiming, *inter alia*, lack of jurisdiction and improper service. That same day, the court stayed the scheduled hearing pending disposition of Appellants' preliminary objections. Appellants later withdrew their preliminary objections.

On November 2, 2009, Appellants filed for a declaratory judgment, claiming the reservation of rights in the deed's exception included Marcellus shale gas and disputing Appellees' claim of adverse possession. On November 4, 2009, Appellants filed an answer to the complaint. On November 20, 2009, Appellees filed preliminary objections to Appellants' request for a declaratory judgment, claiming Appellants (1) lacked standing; (2) failed to conform to rule or law by filing a motion for declaratory judgment instead of a separate declaratory judgment action; and (3) failed to state a claim upon which relief can be granted.

On November 24, 2009, Appellants filed an answer to Appellees' preliminary objections. On January 19, 2010, the court held a hearing on Appellants' "motion" for declaratory judgment. On January 27, 2010, the court (1) sustained the preliminary objections in the nature of a *demurrer* and dismissed with prejudice Appellants' request for a declaratory judgment that natural gas is included in the reservation of the deed; (2) stayed the preliminary objections regarding standing and ordered the

parties to file depositions, interrogatories, and affidavits, or request an evidentiary hearing on the issue; and (3) dismissed Appellants' "motion" for declaratory judgment and found moot Appellees' preliminary objections for failure to conform to rule or law, based on the court's ruling on the *demurrer*. On February 9, 2010, Appellants filed a motion for reconsideration, which the court denied.

On February 16, 2010, Appellants filed a notice of appeal. On appeal, Appellants challenged only the portion of the court's order sustaining Appellees' preliminary objections in the nature of a *demurrer* and dismissing with prejudice Appellants' request for a declaratory judgment that natural gas is included in the reservation of the deed. On October 22, 2010, this Court remanded the case, with one dissent. *See Butler v. Charles Powers Estate*, 15 A.3d 538 (Pa.Super.2010) (unpublished memorandum). The panel majority determined the record contained no findings regarding standing, and standing was a threshold issue that must be resolved before the case could proceed. The dissent took the position that this Court could resolve the matter without first determining the standing issue because the deed does not mention natural gas, and Pennsylvania law clearly states there is a rebuttable presumption that a deed creating an estate for minerals and oils does not convey natural gas, absent an express reference to the contrary. Due to its disposition, the panel majority did not reach the merits of Appellants' claims. *See id.*

During the pendency of that appeal, Appellees filed a *praecipe* requesting that the court sustain Appellees' preliminary objections related to the standing issue or, alternatively, conduct an evidentiary hearing. Consequently, the court held a hearing on September 24, 2010. By order filed September 29, 2010, with notice sent to the parties on October 1, 2010, the court overruled Appellees' preliminary objections, expressly stating that Appellants had standing. Given that the court had decided the standing issue favorably to Appellants, they timely filed a notice of appeal on Monday, November 1, 2010, again raising the issue asserted in their first appeal that this Court had declined to address until resolution of the standing issue. The court did not order Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellants did not file one.

Appellants raise one issue for our review:

> WHETHER ... [THE TRIAL COURT] ERRED IN DETERMINING THAT THE ... RESERVATION IN THE CHAIN OF TITLE TO THE SURFACE LAND CURRENTLY OWNED BY ... APPELLEES DID NOT INCLUDE A RESERVATION OF ONE HALF OF SUCH UNCONVENTIONAL MARCELLUS SHALE GAS AS MIGHT BE FOUND UNDER THE LAND[.]

(Appellants' Brief at 3).

■■■ The relevant scope and standard of review are as follows:

> Our review of a trial court's sustaining of preliminary objections in the nature of a *demurrer* is plenary. Such preliminary objections should be sustained only if, assuming the averments of the complaint to be true, the plaintiff has failed to assert a legally cognizable cause of action. We will reverse a trial court's decision to sustain preliminary objections only if the trial court has committed an error of law or an abuse of discretion.

*Kramer v. Dunn*, 749 A.2d 984, 990 (Pa.Super.2000) (internal citations omitted).

All material facts set forth in the complaint as well as all inferences reasonably [deducible] therefrom are admitted as true for [the purpose of this review]. The question presented by the *demurrer* is whether, on the **facts** averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a *demurrer* should be sustained, this doubt should be resolved in favor of overruling it.

*Wawa, Inc. v. Alexander J. Litwornia & Associates*, 817 A.2d 543, 544 (Pa.Super.2003) (quoting *Price v. Brown*, 545 Pa. 216, 221, 680 A.2d 1149, 1151 (1996)) (emphasis added). Regarding a *demurrer*, this Court has held:

A *demurrer* is an assertion that a complaint does not set forth a cause of action or a claim on which relief can be granted. A *demurrer* by a defendant admits all relevant facts sufficiently pleaded in the complaint and all inferences fairly deducible therefrom, but not conclusions of law or unjustified inferences. In ruling on a *demurrer*, the court may consider only such matters as arise out of the complaint itself; it cannot supply a fact missing in the complaint.

*Binswanger v. Levy*, 311 Pa.Super. 41, 457 A.2d 103, 104 ( [Pa.Super.] 1983) (internal citations omitted). Where the complaint fails to set forth a valid cause of action, a preliminary objection in the nature of a *demurrer* is properly sustained. *McArdle v. Tronetti*, 426 Pa.Super. 607, 627 A.2d 1219, 1221 ( [Pa.Super.] 1993), *appeal denied*, 537 Pa. 622, 641 A.2d 587 (1994).

*Lerner v. Lerner*, 954 A.2d 1229, 1234–35 (Pa.Super.2008). Additionally,

Our standard of review in a declaratory judgment action is narrow. We review the decision of the trial court as we would a decree in equity and set aside factual conclusions only where they are not supported by adequate evidence. We give plenary review, however, to the trial court's legal conclusions.

*Universal Health Services, Inc. v. Pennsylvania Property and Cas. Ins. Guar. Ass'n*, 884 A.2d 889, 892 (Pa.Super.2005) (internal citations omitted). "In reviewing a declaratory judgment action, we are limited to determining whether the trial court clearly abused its discretion or committed an error of law." *Bianchi v. Bianchi*, 859 A.2d 511, 515 (Pa.Super.2004).

Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.

*Miller v. Sacred Heart Hosp.*, 753 A.2d 829, 832 (Pa.Super.2000) (internal citations omitted).

*Jarl Investments, L.P. v. Fleck*, 937 A.2d 1113, 1121 (Pa.Super.2007).

Appellants argue that Appellees' predecessors intended to distinguish surface rights from subterranean rights upon conveying the land by way of the exception in Appellees' deed. Appellants assert Marcellus shale is a mineral consistent with the reservation of rights in Appellees' deed, because a mineral is any inorganic object that can be removed from soil and used for commercial purposes; and no Pennsylvania decision has decided that mineral rights exclude Marcellus shale.

Appellants further aver that prior to the Pennsylvania Supreme Court's decision in *Dunham v. Kirkpatrick*, 101 Pa. 36 (1882), the ordinary meaning of the word "miner-

als" included natural gas. Appellants maintain the decisions in *Dunham* and *Highland v. Commonwealth,* 400 Pa. 261, 161 A.2d 390 (1960), *cert. denied,* 364 U.S. 901, 81 S.Ct. 234, 5 L.Ed.2d 194 (1960), are not controlling in this case. In *Dunham* and *Highland,* the Pennsylvania Supreme Court held that a reservation or exception in a deed reserving "minerals," without any specific mention of natural gas or oil, creates a rebuttable presumption that the grantor did not intend for "minerals" to include natural gas or oil. Appellants insist the Court decided *Dunham* in 1882, after the scrivener had created the deed at issue, and he could not have anticipated Pennsylvania courts would depart from past precedent and impose a new interpretation of what constitutes a mineral. Appellants claim *Highland* interpreted a deed created in 1900, when the scrivener had the benefit of the *"Dunham* Rule" in drafting the deed in that case. Appellants assert *Dunham* and *Highland* are also distinguishable from this case because those cases dealt with conventional gas; Marcellus shale gas is an unconventional gas. Appellants submit conventional gas reservoirs involve *"ferae naturae,"* or free flowing "wild" gas, while Marcellus shale contains unconventional gas reservoirs. Appellants explain the recovery techniques for Marcellus shale gas differ from those used to recover conventional natural gas.

Appellants also rely on *U.S. Steel Corp. v. Hoge,* 503 Pa. 140, 468 A.2d 1380 (1983), to support their proposition that "whoever owns the shale, owns the gas." In *Hoge,* the Court stated that such gas as is present in coal belongs to the owner of the coal, coal bed gas that migrates into surrounding property belongs to owner of the surrounding property. Appellants suggest Marcellus shale is similar to coal in that both contain natural gas that can be extracted only while the coal or shale is in the ground by a process known as "hydrof-

racturing," or pumping water under pressure into the vein to fracture the coal or Marcellus shale, which releases the gas. Appellants conclude the court erred by sustaining Appellees' preliminary objections in the nature of a *demurrer* and by dismissing their request for declaratory judgment, and this Court must vacate the court's order and remand for further proceedings. For the following reasons, we agree with some of Appellants' contentions.

When interpreting a deed:

> [A] court's primary object must be to ascertain and effectuate what the parties themselves intended. The traditional rules of construction to determine that intention involve the following principles. First, the nature and quantity of the interest conveyed must be ascertained from the deed itself and cannot be orally shown in the absence of fraud, accident or mistake. We seek to ascertain not what the parties may have intended by the language but what is the meaning of the words they used. Effect must be given to all the language of the instrument, and no part shall be rejected if it can be given a meaning. If a doubt arises concerning the interpretation of the instrument, it will be resolved against the party who prepared it. To ascertain the intention of the parties, the language of a deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

*Consolidation Coal Co. v. White,* 875 A.2d 318, 326–27 (Pa.Super.2005) (internal citations omitted). "[W]ords of a contract are to be given their ordinary meaning." *Kripp v. Kripp,* 578 Pa. 82, 90, 849 A.2d 1159, 1163 (2004).

When construing the term "minerals," as used in a deed, our Supreme Court has stated:

Mineral is not *per se* a term of art or of trade, but of general language, and presumably is intended in the ordinary popular sense which it bears among English speaking people. It may in any particular case have a different meaning, more extensive or more restricted, but such different meaning should clearly appear as intended by the parties.... [T]he word "mineral" has a very broad meaning ... and also a more restricted scientific use, it has also a commercial sense, in which it is most commonly used in conveyances and leases of land, and in which it may be presumed to be used in such instruments. In that sense[,] it may include any inorganic substance found in nature having sufficient value separated from its situs as part of the earth to be mined, quarried, or dug for its own sake or its own specific uses. But, though it may include all such substances, it does not necessarily do so.... The cardinal test of the meaning of any word in any particular case is the intent of the parties using it....

*Silver v. Bush,* 213 Pa. 195, 197–98, 62 A. 832, 833 (1906) (internal citations omitted) (holding reservation of minerals underlying land did not include natural gas; even though natural gas constitutes "mineral" in broadest sense of word, appellant failed to present evidence that parties understood "minerals" to include natural gas).[1]

In *Dunham, supra,* the Pennsylvania Supreme Court interpreted a deed containing the following clause: "Excepting and reserving all the timber suitable for sawing; also, all minerals; also, the right of way to take off such timber and minerals." *Dunham, supra* at *1. The defendants had argued the deed's reservation of "all minerals" included a right to petroleum oil. The Court rejected the defendants' argument, holding a reservation of "all minerals" does not reserve petroleum oil under the plain, ordinary and popular meaning of the word; and the scrivener would have expressly reserved oil if so intended.

In *Highland, supra,* the Court expanded the *Dunham* rule as follows:

In [*Dunham, supra* ] this Court enunciated a rule of construction of the word

1. Other jurisdictions have addressed the definition of "minerals" when interpreting a deed. *See e.g., Kalberer v. Grassham,* 282 Ky. 430, 138 S.W.2d 940 (1940) (holding conveyance of all minerals of every kind and character except coal and natural gas and coal oil, included conveyance of sandstone quarry, in absence of other qualifying words or restrictions); *McCombs v. Stephenson,* 154 Ala. 109, 44 So. 867 (1907) (stating "minerals," in conveyances of "minerals," means all substances in earth's crust, sought for and removed for substance itself, and is not limited to metallic substances, but includes salt, coal, clay, stone, etc.; deed conveying coal, ores and other minerals and metals in land included conveyance of shale; admission of expert's testimony as to meaning of "minerals" and whether shale at issue constituted "mineral" was proper). *But see Beury v. Shelton,* 151 Va. 28, 144 S.E. 629 (1928) (holding reservation of all

metals and minerals of every kind and character whatsoever in and underlying entire body of land, did not include reservation of limestone where it was well-known that land where deed was to operate was "limestone country" and conveyance reserving limestone and right to remove it would reserve practically everything and grant nothing; each case must be decided upon language of grant or reservation, surrounding circumstances, and intention of grantor); *Rock House Fork Land Co. v. Raleigh Brick & Tile Co.,* 83 W.Va. 20, 97 S.E. 684 (1918) (holding conveyance of all coal and other minerals of every kind and description except gas and oil in underlying land, did not include conveyance of clay, where rights granted for removal of such minerals was for mining purposes; plaintiff failed to present evidence that clay fell within terms of grant).

"minerals" to be applied when determining the inclusion therein or the exclusion thereform of natural gas or oil. This decision established a rule of property which was a recognized part of the law of this state . . . and is a rule upon which the validity of many titles has long since rested. The *Dunham* rule . . . is based upon the popular conception of the meaning of the word "minerals". The rule may be briefly stated: **if, in connection with a conveyance of land, there is a reservation or an exception of "minerals" without any specific mention of natural gas or oil, a presumption, rebuttable in nature, arises that the word "minerals" was not intended by the parties to include natural gas or oil**. . . . As a rule of property long recognized and relied upon, the *Dunham* rule binds and controls this situation: that the word "minerals" appears in a grant, rather than an exception or a reservation, in nowise alters the rule. To rebut the presumption established in *Dunham, supra,* that natural gas or oil is not included within the word "minerals" there must be **clear and convincing evidence** that the parties to the conveyance intended to include natural gas or oil within such word.

*Highland, supra* at 276–77, 161 A.2d at 398–99 (internal citations and footnote omitted) (emphasis added). Additionally, a reservation in a deed does not include natural gas, where the reservation expressly lists oil and various other minerals. *See Bundy v. Myers,* 372 Pa. 583, 584–85, 94 A.2d 724, 725 (1953) (holding deed containing following reservation did not include natural gas: "Excepting and reserving, out of this land, the oil, coal, fire clay and minerals of every kind and character with rights of entry for the purpose of removal of the same . . .").

The *Hoge* case involved a dispute between two parties who owned distinct mineral rights on the same land; the dispute centered on whether the owner of the specific vein of coal, or the owner of oil and gas rights in the surrounding substrata was entitled to recover and develop coal bed gas located within a specific vein of coal. The *Hoge* Court explained:

[A]s a general rule, subterranean gas is owned by whoever has title to the property in which the gas is resting. When a landowner conveys a portion of his property, in this instance coal, to another, it cannot thereafter be said that the property conveyed remains as part of the former's land, since title to the severed property rests solely in the grantee. In accordance with the foregoing principles governing gas ownership, therefore, **such gas as is present in coal must necessarily belong to the owner of the coal,** so long as it remains within his property and subject to his exclusive dominion and control. The landowner, of course, has title to the property surrounding the coal, and owns such of the coal bed gas as migrates into the surrounding property.

*Hoge, supra* at 147, 468 A.2d at 1383 (internal citations omitted) (emphasis in original).[2] Thus, the coal bed gas contained in the coal belonged to the owner of the coal. *Id.* at 147–48, 468 A.2d at 1383–84.

 Instantly, the trial court sustained Appellees' preliminary objections in the

---

**2.** Pennsylvania has yet to determine whether shale is analogous to coal in this context, but at least one other jurisdiction has found similarities between the two substances in this context. *See Cimarron Oil Corp. v. Howard Energy Corp.,* 909 N.E.2d 1115 (Ind.App. 2009) (comparing gas in coal and shale formations as similar gases; gas in shale is generally produced in same manner as gas in coal).

nature of a *demurrer,* and dismissed with prejudice Appellants' request for a declaratory judgment that shale gas was included in the reservation of the deed. The court reasoned:

> We are of the opinion that the Supreme Court case of [*Dunham, supra* ] controls that issue raised in the trial court. The case held that a reservation in a deed of "all minerals" did not include petroleum oil.
>
> Such has now been the rule of property and conveyancing for over one hundred years. We further note that the deed in question filed in 1881 not having made specific reference to a reservation of natural gas rights, we cannot rely upon other evidence other than the plain language of the deed itself. Oral testimony would not be admissible in the absence of fraud, accident or mistake.
>
> In [*Highland, supra* ], the Pennsylvania Supreme Court held that the presumption is that the word "minerals" in a conveyance does not include natural gas. In that case, "the only reservation in the Commonwealth deed was of the coal, fire clay, limestone, iron ore and other mineral that had been heretofore sold and conveyed to third parties." It not being specific as to natural gas the court determined natural gas rights were not conveyed prior thereto to third parties. In the instant matter although petroleum oil is specifically mentioned, there is no specific reservation of natural gas. As such, we deem it not to have been reserved in the Charles Powers' deed. Lastly, the pleadings do not indicate that any of Charles Powers' heirs and assigns made claim to the natural gas rights for a period in excess of one hundred years. We accept this as show-

ing no intent to claim natural gas rights by Charles Powers or his successors, heirs or assigns.

(Trial Court Opinion, filed January 7, 2011, at 1–2) (some internal citations omitted). We respectfully disagree with the court's decision at this point in the proceedings.

The *Dunham* and *Highland* decisions do not end the analysis, absent a more sufficient understanding of whether, *inter alia* (1) Marcellus shale constitutes a "mineral"; (2) Marcellus shale gas constitutes the type of conventional natural gas contemplated in *Dunham* and *Highland;* and (3) Marcellus shale is similar to coal to the extent that whoever owns the shale, owns the shale gas. On this record, we are unable to say with certainty that Appellants have no cognizable claim based on the facts averred. *See Lerner, supra.* Consequently, the parties should have the opportunity to obtain appropriate experts on whether Marcellus shale constitutes a type of mineral such that the gas in it falls within the deed's reservation. *See Consolidation Coal Co., supra.* Accordingly, we reverse and remand for further proceedings.[3]

Order reversed; case remanded for further proceedings. Jurisdiction is relinquished.

---

**3.** On appeal, Appellees ask this Court to impose sanctions on Appellants pursuant to Pa. R.A.P. 2744 (stating appellate court may award counsel fees where court determines appeal is frivolous). We deny Appellees' requested relief.