J-A09023-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| DANIEL JOHNSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VALERIE L. WEBER AND RAYMOND | : | No. 1306 WDA 2019 |
| E. WEBER | : | |

Appeal from the Judgment Entered September 26, 2019
In the Court of Common Pleas of Beaver County Civil Division at No(s):
10758 of 2016 C.A.

| | | |
|---|---|---|
| DANIEL JOHNSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VALERIE L. WEBER AND RAYMOND E. | : | |
| WEBER | : | |
| | : | No. 1338 WDA 2019 |
| Appellants | : | |

Appeal from the Judgment Entered September 26, 2019
In the Court of Common Pleas of Beaver County Civil Division at No(s):
10758 of 2016

BEFORE:   SHOGAN, J., MURRAY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY MURRAY, J.:                         FILED JULY 14, 2020

In these consolidated appeals, Daniel Johnson (Appellant) appeals from

the judgment entered in favor of Valerie L. Weber and Raymond E. Weber (the

Webers).  The Webers have also filed a cross-appeal challenging the trial

_____

[*] Retired Senior Judge assigned to the Superior Court.

court's award of pre-judgment interest to Appellant. Upon review, we affirm in part and vacate in part.

On July 27, 2004, Appellant and the Webers entered into an Installment Land Contract (ILC) regarding real property (the property) owned by the Webers in Beaver County. The property is comprised of approximately 26 unimproved acres, and consists of three separate parcels.[1] The parties agreed to a purchase price of $57,000, which Appellant would pay with a down payment, followed by yearly installments until paid in full. Pertinently, the ILC provides for Appellant's responsibilities as the buyer, and the Webers' rights as sellers:

Additional terms:

\* \* \*

(2) Buyer, at his sole expense, shall be responsible for the future subdivision of the property herein being conveyed to facilitate the transfer.

\* \* \*

3. TAX AND ASSESSMENTS. Buyer agrees to pay all taxes and assessments levied on the Property, municipal or otherwise, falling due after the date hereof. ...

4. INSURANCE. Buyer agrees during the life of this contract to keep the Property insured by reputable companies approved by Seller in an amount approved by Seller not less than the full insurable value of the improvements on the Property, if any. The

---

[1] On the date of execution, a deed was prepared containing a description of the three parcels, which the parties signed. The parties agreed that Appellant's counsel would hold the deed in escrow, and not record it, until Appellant had fulfilled all requirements and payments set forth in the ILC.

insurance shall be made payable to both Seller and Buyer as their interest appear [sic], and the policy shall contain an endorsement to this effect.  A copy of said policy to be supplied to Seller.

* * *

6.  DEFAULT.  A default shall occur under this contract if the Buyer fails to pay … [by the] due date (a) any part of principal or interest when due and payable …; (b) or any taxes or assessment under paragraph 3 above; (3) [sic] or any insurance premiums necessary to keep the Property insured under paragraph 4 above.  In addition, the failure of Buyer to perform or carry out the terms of this contract in any other way or manner shall be a default under this contract.

7.  REMEDIES.  Upon the occurrence of any default as set forth in paragraph 6 above, Sellers may immediately, and without notice to Buyer: (a) confess judgment against buyer, and … in favor of the seller as of any term, for the above principal sum remaining unpaid, interest thereon, and any other sums due from the Buyer plus cost[s] of suit and an attorney's commission of ten percent (10%)….

ILC, 7/27/04, at 3-4 (unnumbered).[2]

Appellant completed full payment toward the property on October 27, 2012.  Pursuant to the ILC, Appellant paid the Webers interest throughout the years prior to fulfilling payment.  However, Appellant never (1) secured insurance on the property; (2) paid taxes on the property; or (3) obtained a subdivision.  Based on these omissions, the deed to the property was not conveyed to Appellant.  Additionally, the Webers retained all of the money Appellant paid them for the property.

---

[2] Importantly, the ILC does not mention the oil and gas rights to the property, nor does it reference mineral rights.

On June 8, 2016, Appellant filed a complaint against the Webers, asserting breach of contract and seeking specific performance of the ILC and possession of the deed to the property.[3] The Webers then filed an answer, new matter and counterclaim. The Webers asserted claims of breach of the ILC and quiet title, and requested an award of attorney's fees. Appellant filed an answer in response.

On September 25, 2017, Appellant filed a motion for summary judgment, asserting that the facts were undisputed and he was entitled to summary judgment with respect to possession of the deed and the oil and gas rights to the property. On August 30, 2017, the Webers filed a motion for judgment on the pleadings. On March 22, 2018, the trial court entered an order denying both parties' motions.

On April 25, 2018, Appellant's counsel filed a written demand for a jury trial. On August 1, 2018, the trial court dismissed Appellant's request, deeming it waived because it was untimely.

On December 6, 2018, the matter proceeded to a two-day non-jury trial. By order entered at the close of trial on December 7, 2018, the trial court stated, in relevant part, as follows:

1. [Appellant] has failed to sustain his burden on the claims asserted in his Second Amended Complaint, namely breach of contract and specific performance, and said claims are dismissed.

---

[3] Appellant subsequently filed two, substantially similar amended complaints.

- 4 -

2. [The Webers] have sustained their burden on the claims of breach of contract and quiet title asserted against [Appellant] in their counterclaim.

3. Based upon [the Webers] prevailing on their counterclaim, title is quieted in their favor, and they may acquire and record any appropriate document or deed necessary to retain possession of the property.

4. Under the terms of the [ILC], [the Webers] are entitled to attorney's fees, but the [c]ourt cannot make a determination on that amount in this Order. [The Webers] shall be required to file a separate petition requesting attorney's fees that may be contested by [Appellant], and the [c]ourt will hold a separate hearing on that matter.

5. Based upon the findings and determinations in this Order, the [c]ourt exercises its equitable powers by requiring [the Webers] to return the $57,000 amount of the purchase price, plus any interest paid by [Appellant] to date, and [Appellant] may petition the [c]ourt for interest based upon [the Webers'] retention of this money since the time of payment, which the [Webers] will have the opportunity to oppose. The [c]ourt will hold a separate hearing on that matter as well, at the same time that the [c]ourt addresses the issue of attorney's fees.

Order, 12/7/18, at 1-2.

On March 22, 2019, the trial court conducted a hearing on the outstanding matters; i.e., repayment of Appellant's interest payments and the Webers' demand for an award of attorney's fees and costs. By Order entered March 26, 2019, the trial court awarded to the Webers attorney's fees and costs of approximately $28,400; and to Appellant, pre-judgment interest of approximately $29,000.[4]

---

[4] In order to compute the appropriate compounded interest rate, which the trial court eventually set at 3.5%, it recruited the assistance of a finance

Both parties timely filed motions for post-trial relief. After conducting a hearing on June 19, 2019, the trial court denied these motions by order entered on July 30, 2019. Both parties then respectively filed timely notices of appeal. In response, the trial court ordered them to file Pennsylvania Rule of Appellate Procedure 1925(b) concise statements of errors complained of on appeal. Both parties timely complied, and the trial court issued a Rule 1925(a) opinion.

On appeal, Appellant raises seven issues for our review:

1. Did the court below err in failing to grant the motion for summary judgment filed by the Appellant relative to the oil and gas rights of the property?

2. Did the court below err in determining that the failure of the Appellant to get a subdivision was a breach of the ILC?

3. Did the court below err in finding that the failure to pay certain taxes was a breach of the ILC by the Appellant?

4. Did the court below err in finding that the failure to provide insurance on the property was a material breach of the [ILC] by the Appellant?

5. Did the court below err in denying the Appellant a jury trial?

6. Did the court below err in granting attorney's fees to the [Webers]?

7. Did the court below err in granting the Appellant 3.5% interest on the money he paid for the [property]?

---

officer from the Beaver County Controller's Office, citing the court's lack of expertise to perform such calculation.

Appellant's Brief at 3-4 (issues numbered and reordered for ease of disposition).

In their cross-appeal, the Webers raise two issues for our review:

I.   Did the [c]ourt err in awarding [Appellant], the defaulting party under the ILC, interest where [Appellant] failed to provide any legal basis for an award of interest and wholly failed to meet his burden of proof to provide competent evidence of the calculation of interest[,] compounded over a ten (10) year period?

II.  Did the [c]ourt err where, after the close of the evidentiary hearing, the [c]ourt recruited[,] ex parte[,] an unidentified individual from the Beaver County Controller's Office to perform an interest calculation based upon a schedule of payments not received into evidence[,] and then adopted and awarded interest to [Appellant] based wholly upon that calculation without providing either party the opportunity to cross examine the witness[,] both as to qualifications and the means and method of the interest calculation?

Webers' Brief at 4.

We begin our discussion by noting:

Our standard of review in non-jury cases is limited to: a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law.  Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion.  When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.

Landis v. Wilt, 222 A.3d 28, 34 (Pa. Super. 2019) (citation omitted).

Additionally, we review a trial court's denial of post-trial motions for an abuse of discretion.  Guntrum v. Citicorp Tr. Bank, 196 A.3d 643, 646 (Pa. 2018).

We first address Appellant's issues. He argues that the trial court erred in denying his motion for summary judgment, where he paid the full purchase price for the property, but the Webers nevertheless "refuse[d] to allow Appellant to file the deed unless there is a deed to them transferring the oil and gas rights back to them." Appellant's Brief at 10. According to Appellant, the Webers "are trying to blackmail [] Appellant into giving them something that they are not entitled to." Id. Appellant emphasizes that there is no mention in the ILC as to reservation of oil and gas rights to the property, and "[t]he first time that there is any mention of these rights is after the [ILC had] been completed and the deed was to be recorded." Id. at 12. Appellant asserts that pursuant to the longstanding rule announced by our Pennsylvania Supreme Court in Dunham & Shortt v. Kirkpatrick, 101 Pa. 36 (Pa. 1882) and its progeny,[5] the trial court should have ruled that the oil and gas rights to the property were transferred to Appellant, who may record the deed. See Appellant's Brief at 11-13.

When reviewing a trial court's denial of a motion for summary judgment, we adhere to the following standard and scope of review:

---

[5] The "Dunham Rule" provides that a reference to "minerals" in a reservation of rights in a private deed does not include oil and gas. Dunham, 101 Pa. at 44. The progeny of Dunham "has been unwavering in its clarity that, absent the terms 'oil' or 'natural gas' being included within a reservation for mineral rights within a private deed, oil or natural gas simply are not encompassed within the reservation without clear and convincing parol evidence produced by the proponent of the reservation to the contrary." Butler v. Charles Powers Estate, 65 A.3d 885, 896 (Pa. 2013).

> We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear[:] the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Pergolese v. Std. Fire Ins. Co.*, 162 A.3d 481, 486 (Pa. Super. 2017) (citation omitted).

Here, the trial court offered the following reasons for its denial of Appellant's motion for summary judgment:

> [Appellant] has asserted that the facts in this case are undisputed and that those facts entitle him to summary judgment. The [c]ourt respectfully disagrees with [Appellant's] position in that regard for, at least, two reasons. First, [Appellant] relies primarily upon the [ILC]. [Appellant] asserts that not only is he entitled to summary judgment and a ruling that he should receive title to the property, but he also asserts that the [ILC] is devoid of any mention of oil and gas rights and, therefore, those rights should be transferred to him. There is a critical problem in connection with [Appellant's] position. In the [ILC] ..., it specifically states that the property in question is "known as Parcel 18 on Survey dated February 9, 1999 and revised May 19, 1999 as proposed by Gregory A. Torno, PLS, said description recorded at 26/259. A copy of said description and survey is hereby attached as unrecorded survey No. 1." Despite this description, these alleged documents, the survey of February 9, 1999 and revised survey of May 18, 1999, were not attached to the [ILC], were not attached to any of the pleadings or record in this case, and were never produced for any purpose. Thus, there is an issue of material fact raised by the [Webers] with regard to the actual description of the property. The absence of these documents creates an issue that needs to be addressed going forward and decided by subsequent evidence if necessary.

Moreover, [Appellant] claims that he paid the full and final amount for purchase of the property, but [the Webers] assert that the full purchase price was never paid[, i.e., insofar as Appellant never paid taxes or insurance on the property,] and that [Appellant] is in breach of contract for that reason. This creates an additional issue of material fact that must be addressed by the evidence and requires denial of [Appellant's] summary judgment motion.

Trial Court Memorandum, 3/28/18, at 6-7. As the court's rationale is supported by the record, we agree with its determination.

Additionally, our review reveals that counsel for both parties agreed that whichever party was determined to be the proper owner of the property would also receive all subsurface rights. See N.T. (Trial), 12/6/18, at 109-110, 118. As we discuss below, the trial court correctly determined that Appellant had materially breached the ILC and thus the Webers are the owners of the property; accordingly, the Webers hold the subsurface rights. Finally, contrary to Appellant's claim, Dunham and its progeny do not support his argument. In sum, the trial court did not err or abuse its discretion in denying Appellant's motion for summary judgment, and his first issue does not merit relief.

Appellant's next three issues are related in that they each challenge the trial court's finding that Appellant breached the terms of the ILC. We address the issues together, mindful of our standard and scope of review:

The interpretation of any contract is a question of law and this Court's scope of review is plenary. ... In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and

- 10 -

unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

*Gamesa Energy USA, LLC v. Ten Penn Ctr. Assocs., L.P.*, 181 A.3d 1188, 1192 (Pa. Super. 2018) (citation omitted).

"It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). "A material breach of a contract by one party allows the party not in breach to suspend performance." *Widmer Eng'g, Inc. v. Dufalla*, 837 A.2d 459, 467 (Pa. Super. 2003). "If, however, the breach is an immaterial failure of performance, and the contract was substantially performed, the contract remains effective." *Id.* (citation omitted).

Here, Appellant claims that the trial court erred in determining that he had materially breached the terms of the ILC by his failure to:

(1)    obtain insurance on the property;

(2)    secure a subdivision of the property; and

(3)    pay property taxes.

See Appellant's Brief at 15-26. Appellant argues that even if he did not comply with all of the requirements of the ILC, such noncompliance does not amount to a breach of the contract because the requirements were not

"material." Id. at 17 (citing Widmer, supra). Concerning the ILC's provision regarding Appellant's payment of insurance on the property, he avers that

> (1) the Webers did not complain about non-payment of insurance until approximately 5 years after Appellant had paid the full purchase price on the property; and

> (2) in any event, the property was unimproved, and therefore, there was no necessity for insurance.

See id. at 16-18. Regarding the ILC's requirement that Appellant pay taxes, he urges that because he had paid the full purchase price prior to the initiation of litigation, his failure to pay taxes was not a material breach of the contract. See id. at 22; see also id. at 20, 22 (asserting that the Webers never communicated to Appellant the amount of taxes he allegedly owed on the property). Finally, concerning the ILC's requirement that Appellant subdivide the property, he maintains that "[t]here is nothing in the agreement that says the subdivision has to be completed before the transfer" of the deed to the property. Id. at 24. Appellant posits that "[o]nly the owner of the property can subdivide the property. Since no deed was ever filed, [] Appellant cannot proceed to subdivide the property by himself." Id.

In its opinion, the trial court addressed and rejected Appellant's claims and determined that his separate failures to comply with the terms of the ILC, when considered collectively, constituted a material breach of the ILC. See Trial Court Opinion, 7/30/19, at 9-12; see also ILC, 7/27/04, at ¶¶ 1(2) and 6 (providing, respectively, that a "default shall occur under this contract if [Appellant] fails to pay … any taxes … or any insurance premiums necessary

- 12 -

to keep the Property insured[,]" and "[Appellant], at his sole expense, shall be responsible for the future subdivision of the property[.]"). The trial court's determination is supported by both the ILC and the law, and we therefore affirm on this basis in rejecting Appellant's second, third and fourth issues. See Trial Court Opinion, 7/30/19, at 9-12.[6]

In his fifth issue, Appellant contends that the trial court erred in denying his right to a jury trial. See Appellant's Brief at 14-15. We disagree.

Pennsylvania Rule of Civil Procedure 1007.1(a) mandates, in relevant part, that the right to a jury trial "shall be deemed waived unless a party files and serves a written demand for a jury trial not later than twenty days after service of the last permissible pleading." Pa.R.C.P. 1007.1(a). Here, Appellant did not file a written demand for a jury trial until April 25, 2018, approximately 8 months after the expiration of the Rule 1007.1(a) deadline.[7] The trial court's finding that Appellant's delay resulted in waiver is supported by the following analysis of our Pennsylvania Supreme Court in a closely related case:

---

[6] Even if, arguendo, the trial court improperly found that Appellant's failure to secure insurance on the property constituted a material breach of the ILC, this would not change our disposition. The trial court correctly determined that Appellant's additional breaches, i.e., his failure to subdivide the property and to pay taxes, collectively constituted a material breach of the contract. See Trial Court Opinion, 7/30/19, at 10.

[7] The "last permissible pleading" under Rule 1017.1(a) that triggered the 20-day deadline was Appellant's July 31, 2017 answer to the Webers' new matter and counterclaim.

> [The defendants'] demand for a jury trial, first asserted in their pre-trial memorandum, was made more than twenty days after the last permissible pleading and, therefore, failed to satisfy the requirements of Rule 1007.1(a). Accordingly the lower court correctly held that a jury trial had been waived. In addition, considerations of prejudice to the other side play no part in enforcing a waiver of a jury trial where the provisions of Rule 1007.1(a) have not been met.

Jones v. Van Norman, 522 A.2d 503, 509 (Pa. 1987).

Finally, we are unpersuaded by Appellant's assertion that since "this matter [is] both a civil and equitable matter," his request for a jury trial should have been honored pursuant to Pennsylvania Rule of Civil Procedure 1038.3 (governing equitable relief and advisory jury verdicts).[8] Appellant's Brief at 14. Appellant was required to comply with Rule 1007.1(a), which unambiguously mandates that the request for a jury trial "shall be deemed waived unless a party files and serves a written demand" within 20 days. Pa.R.C.P. 1007.1(a) (emphasis added); see also Jones, supra. Accordingly, Appellant's fifth issue is unavailing.

In his sixth issue, Appellant argues that the trial court erred in awarding attorney's fees to the Webers because there was no legal authority for such award. See Appellant's Brief at 26-28. According to Appellant:

> None of the [] remedies proposed in the ILC provide for any [a]ttorney's fees in any matter except the confession of judgment. There is also no general provision that gives the [c]ourt the right to impose fees on anyone.

---

[8] Rule 1038.3 provides that "[i]n any case in which there is a claim for equitable relief, the court on its own motion or upon the petition of any party may submit to trial by jury any or all issues of fact arising from that claim." Pa.R.C.P. 1038.3.

Id. at 27-28. Appellant further asserts that the trial court improperly exercised its equitable powers to award attorney's fees. Id. at 28.

Our standard of review of an award of attorney's fees is well settled: "we will not disturb a trial court's determination[] absent an abuse of discretion. A trial court has abused its discretion if it failed to follow proper legal procedures or misapplied the law." Kessock v. Conestoga Title Ins. Co., 194 A.3d 1046, 1059 (Pa. Super. 2018) (citations omitted).

Pennsylvania subscribes to the "American Rule," which provides that a litigant is responsible for the payment of his or her own attorney's fees "unless there is express statutory authorization, a clear agreement of the parties or some other established exception." Mosaica Acad. Charter Sch. v. Commonwealth, 813 A.2d 813, 822 (Pa. 2002); see also Doctor's Choice Physical Med. & Rehab. Ctr., P.C. v. Travelers Pers. Ins. Co., 128 A.3d 1183, 1189 (Pa. 2015).

Here, the trial court opined that its award of reasonable attorney's fees was authorized "based upon the general terms of the [ILC], [and] the law in equity[.]" Trial Court Opinion, 7/30/19, at 14. In support of the invocation of its equitable powers, the court relies upon our Supreme Court's decision in Sack v. Feinman, 413 A.2d 1059, 1065-66 (Pa. 1980) (reversing the chancellor's refusal to award plaintiff pre-judgment interest, and holding that such an award can be permitted in equity in order "to prevent unjust enrichment or where the payment of interest is required to avoid injustice[,]

- 15 -

... [which is within] the discretion of the chancellor."); see also Trial Court Opinion, 7/30/19, at 14-15.

Initially, we disagree with the trial court that an award of attorney's fees was authorized "based upon the general terms of the [ILC.]" Trial Court Opinion, 7/30/19, at 14. The only mention of attorney's fees in the ILC provides "[u]pon the occurrence of any default ... [the Webers] may immediately ... confess judgment against [Appellant] ... for the [] principal sum remaining unpaid, ... plus ... an attorney's commission of ten percent...." ILC, 7/27/04, at 4 (unnumbered).[9] However, it is undisputed that the Webers never confessed judgment against Appellant. Accordingly, we cannot discern a reasonable reading of the terms of the ILC which would afford a contractual remedy for attorney's fees absent a confession of judgment. See, e.g., Mosaica, supra (stating that a party is responsible for their own attorney's fees unless there is, inter alia, "a clear agreement of the parties[.]").

Additionally, we conclude that Sack, supra, upon which the trial court exclusively relies to support its equitable powers to award attorney's fees, is inapposite. As noted above, Sack concerned awards of pre-judgment interest, see Sack, 413 A.2d at 1065-66; it did not implicate awards of attorney's fees, nor has our research disclosed any precedent citing Sack with

---

[9] Regarding this provision, the trial court correctly found that because Appellant had paid the entire purchase price for the property prior to initiating litigation, "there was no basis for an award of attorney's fees for an unpaid balance under the terms of the contract." Trial Court Opinion, 7/30/19, at 14.

respect to claims for attorney's fees. See, e.g., In re Guardianship of Zorek, 475 A.2d 817, 820 n.5 (Pa. Super. 1984) (noting that the holding in Sack is limited and pertains only to equitable awards of pre-judgment interest). Accordingly, we conclude that the trial court erred in awarding attorney's fees to the Webers, and thus vacate the award.

Before reaching Appellant's seventh and final issue, we turn to the two issues that the Webers raise in their cross-appeal. They first argue that the trial court erred in awarding Appellant pre-judgment interest where the ILC did not provide any contractual entitlement to same, and equity likewise did not support the court's award. See Webers' Brief at 10-12. The Webers aver:

> [i]n many respects[, Appellant] acted with unclean hands in his dealings with the [Webers] relative to the ILC and held a cloud over the [Webers'] title to the property for fourteen years. [Thus, Appellant] should not be awarded any interest at law or in equity.

Id. at 11. Additionally, the Webers assert that Appellant failed to meet his burden of proof to establish the amount of interest that he paid over the years, where he "failed to present any witnesses or admissible evidence to support his calculation of interest." Id. at 12.

Our review of an award of pre-judgment interest is for abuse of discretion. See Sack, supra. "Our courts have generally regarded the award of prejudgment interest as not only a legal right, but also as an equitable remedy awarded to an injured party at the discretion of the trial court." Kaiser v. Old Republic Ins. Co., 741 A.2d 748, 755 (Pa. Super. 1999) (citation omitted). "The fairest way for a court is to decide questions

pertaining to interest according to a plain and simple consideration of justice and fair dealing." Linde v. Linde, 220 A.3d 1119, 1150 (Pa. Super. 2019) (citation omitted).

Instantly, the trial court opined that it properly exercised its equitable powers in awarding Appellant pre-judgment interest pursuant to Sack, supra. See Trial Court Opinion, 7/30/19, at 16. Sack stands for the proposition that a court may award pre-judgment interest as an equitable remedy "in order to prevent unjust enrichment or where the payment of interest is required to avoid injustice." Sack, 413 A.2d at 1065; see also Kaiser, 741 A.2d at 755 (citing Sack and stating that "when a defendant holds money or property which belongs in good conscience to the plaintiff, and the objective of the court is to force disgorgement of his unjust enrichment[, p]re-judgment interest in such cases is a part of the restitution necessary to avoid injustice." (citation omitted)).

Here, an injustice would result if we were to uphold the award of approximately $29,000 in pre-judgment interest to Appellant (the breaching party under the ILC), where we afforded Appellant relief and vacated the improper award of approximately $28,400 in attorney's fees to the Webers. Accordingly, to avoid an unjust result, we vacate the trial court's award of pre-judgment interest.[10]

---

[10] We note that our holding does not significantly alter the original disposition of the trial court. Specifically, vacatur of the respective awards of attorney's

- 18 -

In their second issue, the Webers contend that the trial court erred in awarding Appellant pre-judgment interest "based solely upon the calculation performed by [the] unidentified and perhaps unqualified" finance officer from the Beaver County Controller's Office. Webers' Brief at 16. Because we have vacated the award, this issue is moot.

Finally, in Appellant's seventh issue, he complains that the trial court erred in applying an inadequate interest rate of 3.5% to the award of pre-judgment interest. See Appellant's Brief at 28-29. This issue is also moot in light of our disposition.

Based upon the foregoing, we vacate the trial court's awards of (1) attorney's fees to the Webers; and (2) pre-judgment interest to Appellant, as set forth in the court's March 26, 2019 order. We affirm in all other respects.

Judgment affirmed in part and vacated in part. Jurisdiction relinquished.

Judge Shogan joins the memorandum.

Judge Strassburger files a concurring memorandum.

---

fees and interest, which differed in amount by approximately $600, essentially leaves the parties in the same respective positions.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>7/14/2020</u>