J-A19040-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMERFORD FAMILY LIMITED PARTNERSHIP | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROBERT AINBINDER, ROBERT BARRA, RSTM FAMILY TRUST, EUGENE MONAHAN, AND JAMES SERINO | : | No. 849 MDA 2022 |
| | : | |
| Appellants | : | |

Appeal from the Judgment Entered July 25, 2022
In the Court of Common Pleas of Sullivan County Civil Division at No(s):
2017CV-134

BEFORE:  PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:      **FILED: NOVEMBER 14, 2024**

Robert Ainbinder, Robert Barra, RSTM Family Trust, Eugene Monahan, and James Serino (collectively "Appellants") appeal from quiet title judgment entered by the Court of Common Pleas of Sullivan/Wyoming County in favor of Appellee Comerford Family Limited Partnership ("Comerford"). After this Court remanded this case for the trial court to prepare a supplemental opinion, we now review the merits of the appeal. After careful review, we affirm.

We summarized the detailed factual background and procedural history of this case in our previous decision:

> On June 16, 2017, [Comerford] filed a complaint asserting
> claims of slander of title and quiet title against Appellants relevant

---

[*] Former Justice specially assigned to the Superior Court.

to oil and gas rights for to a certain parcel containing 4,045 acres in Sullivan County.[1] By way of background, we will discuss three relevant property conveyances that form the basis of this action, which has a convoluted procedural history.

The parties agree that the source of their alleged rights arose from a common predecessor in title, William A. Monahan. In a June 14, 1955 deed (hereinafter "the Bernice Deed"), the Bernice Land Company agreed to "release and quitclaim to [William A. Monahan], without any covenants or warranties whatsoever, that certain parcel of land in the Townships of Cherry and Colley, County of Sullivan." Bernice Deed, at 1. The deed describes the parcel of land in metes and bounds and does not give an acreage description.

Two days later, in a June 16, 1955 deed ("hereinafter the WALA deed"), William A. Monahan conveyed surface acreage to White Ash Land Association ("WALA") subject to certain exceptions and reservations. The WALA deed states that William A. Monahan "release[s] and quitclaim[s] to [WALA], without any covenants or warranties whatsoever, the surface only of that certain parcel of land in the Townships of Cherry and Colley, County of Sullivan," which the deed described in metes and bounds. WALA Deed, at 1. The deed states that the conveyance contained "4,045 acres of land, more or less." WALA Deed, at 1 (emphasis added).

In the same deed, William A. Monahan included the following exceptions and reservations, which provide in relevant part:

> There is also excepted and reserved from this conveyance (a) all mineral rights and all minerals and metals and natural resources (but not including timber except as hereinafter provided) of every kind and nature lying on and under said surface, including without limitation all natural gas, petroleum, oil, coal, and iron; (b) any and all structures, buildings, equipment, fixtures, pipes, poles, cables, conduits, and other improvements, appurtenances, fixtures, and utilities now on or under said surface and now or heretofore used for mining operations thereon or thereunder or on adjoining premises of the grantor lying

---

[1] Comerford subsequently filed multiple praecipes to reinstate its original complaint.

Northerly and Westerly of the granted premises. The grantor reserves for himself, his heirs and assigns the following rights:

1. The perpetual rights of ingress and egress upon, over and beneath the granted premises and to use the granted premises for the purpose of discovering, testing, drilling, mining, stripping, augering, and otherwise developing, extracting, and removing all materials and products hereinabove reserved and excepted and the further perpetual right to do all things which the grantor, his heirs and assigns in his or their sole discretion may deem necessary or convenient in carrying on mining operations of all kinds and activities incidental thereto both on the granted premises and on adjoining premises of the grantor lying Northerly and Westerly of the granted premises, all without liability for injury or damage caused or done to the granted premises or any structures, buildings, or improvements now thereon or hereafter placed thereon. …

WALA Deed, 6/16/55, at 1.

Nearly three years later, in an April 11, 1958 deed ("hereinafter the "Monahan Deed"), William A. Monahan granted and conveyed to his nephew, John E. Monahan "all of the mineral and surface rights of the grantor in, to, and upon" premises specifically described in metes and bounds. Monahan Deed, at 1. The Monahan Deed indicated that the premises described were "part of the premises conveyed to William A. Monahan by Bernice Land Corporation by deed dated June 14, 1955" and "the mineral and surface rights herein conveyed are part of those reserved by the grantor in deed to [WALA] dated June 16, 1955." Monahan Deed, at 1. While the deed does not contain an acreage description, the parties agree that the property described in the Monahan Deed contains approximately 951.6 acres. Notes of Testimony (N.T.), 6/29/21, at 14, 25.

In this action, the parties stipulated that they do not "dispute each other's respective chain of title in terms of how each party traces its underlying ownership." Parties Agreed Upon Exhibits and Stipulation(s) for Trial, at 3. As the extensive chains of title do not

affect our review of this appeal, we do not find it necessary to include each detailed chain of title in in this decision.

In this quiet title action, [Comerford] sought to challenge the August 11, 2016 quitclaim deed executed by Appellants Ainbinder and Barra purporting to quit claim "ALL SUBSURFACE RIGHTS ONLY, including rights to any and all minerals, including but not limited to, gas, oil, coal, and any other mineral rights" to 3,062 acres in Cherry Township, Sullivan County, Pennsylvania. Quitclaim Deed, at 1 (emphasis in original). The Quitclaim Deed identified the subsurface rights it claimed as those conveyed to John E. Monahan in the Monahan Deed as well as those reserved in the WALA Deed.

[Comerford] (plaintiff below) claims its title to the disputed oil and gas rights derives from William A. Monahan's interest from the WALA Deed. [Comerford] argues that while the WALA Deed conveyed 4,045 acres of surface land to WALA, the deed specifically reserved and excepted to William A. Monahan all of the oil, gas, and mineral rights for the 4,045 acres. [Comerford] asserts that the reservation of oil, gas, and minerals belonged to William A. Monahan's heirs. Complaint, at ¶ 13-14.

[Comerford] initially admitted that, in the 1958 Monahan Deed, which granted and conveyed "all of the mineral and surface rights of the grantor," William A. Monahan transferred to John E. Monahan the "surface acreage" along with "mineral rights" of a certain parcel of land, which the parties later agreed was 951.6 acres. Complaint, at ¶ 16. However, [Comerford] argued that Pennsylvania law provides that "mineral rights do not include natural gas and oil." Complaint, at ¶ 17. Thus, [Comerford] argued that by operation of law, William A. Monahan specifically reserved the oil and gas rights from the 951.6 acres conveyed by the Monahan Deed. Complaint, at ¶ 18. As such, [Comerford] asserted that neither the Monahan Deed nor the WALA Deed provided any oil and gas rights to Appellants.

In response to [Comerford]'s complaint, Appellants (defendants below), filed an Answer, New Matter, and Counterclaim in quiet title,[2] in which they asserted that their predecessor, John E. Monahan, had conveyed them extensive

_____

[2] After retaining new counsel, Comerford requested permission to file an Amended New Matter and Counterclaim, which the trial court granted on July 31, 2019.

surface and subsurface rights. While Appellants acknowledged William A. Monahan conveyed a large portion of the surface estate he had acquired from the Bernice Land Company to WALA in the 1955 WALA Deed, Appellants asserted that William A. Monahan "granted and conveyed" the remaining acreage from the Bernice Deed to John E. Monahan in the 1958 Monahan Deed in fee simple which included all surface and subsurface rights.

In addition, Appellants noted that the WALA Deed contains "an extensive exception and reservation in favor of William A. Monahan," with respect to the oil, gas, and mineral rights to the 4,045 acre parcel for which WALA was conveyed the surface estate. In contrast, Appellants pointed out that the Monahan Deed does not make an exception or reservation for oil or gas or contain any of the other exceptions or reservations made in the WALA Deed.

Thus, Appellants asserted the Monahan Deed conveyed John E. Monahan in fee simple the 951.6 acres of the property described in the Monahan Deed as well as all things excepted and reserved by William A. Monahan in the WALA Deed. Accordingly, in their counterclaim sounding in quiet title, Appellants asked the trial court to "forever bar [Comerford] from asserting any right, lien, title, or interest in the land consistent with [Appellants' interest] as set forth in the Counterclaim." New Matter with Counterclaim, 5/20/19, at 3.

On June 29, 2021, a bench trial was held at which the parties did not offer testimony but submitted exhibits and stipulations for the court's consideration along with oral argument. One of the parties' stipulations was that "[t]he parties agree that what is at issue is the ownership of oil and gas rights only." Parties Agreed Upon Exhibits and Stipulations for Trial, at 3.

However, at trial, [Comerford] claimed for the first time that William A. Monahan did not convey any surface acreage to John E. Monahan. Specifically, [Comerford] argued that in the 1955 WALA Deed, William A. Monahan conveyed to WALA "surface rights to the entire parcel described in the Bernice Deed" and reserved for himself, his heirs, and assigns the rights to oil, gas, and minerals. N.T. at 10. Thus, [Comerford] contended that the 1958 Monahan Deed, which conveys …"all of the mineral and surface rights of the grantor" in the premises described in that deed, only conveyed to John E. Monahan mineral rights and the limited surface rights to access such minerals. N.T. at 12, 23-24.

- 5 -

At trial, Appellants' counsel pointed out on the record that [Comerford's] argument that William A. Monahan had not conveyed John E. Monahan surface acreage contradicted [Comerford's] pleadings and the testimony of Comerford's own expert. N.T. at 51-53, 55-56.

Appellants maintained their view that John E. Monahan had been conveyed the 951.6 acres described in the Monahan Deed in fee simple, and thus, was conveyed all of the surface and subsurface rights of this parcel. Appellants argued that the WALA Deed did not convey the entire surface estate William A. Monahan received in the Bernice Deed and did not include the 951.6 acres described in the Monahan Deed, which lies to the north and west of the surface acreage granted to WALA. Appellants asserted that language in the WALA Deed referring to the "adjoining premises of the grantor lying Northerly and Westerly of the granted premises" was the 951.6 acres that was not conveyed to WALA but was later conveyed to John E. Monahan.

At the conclusion of the trial, the trial court ordered the parties to file post-trial briefs with proposed findings of fact and conclusions of law. Thereafter, in an order entered October 4, 2021, the trial court set forth the following conclusions:

1. Comerford Family Limited Partnership, is the owner of all the oil, gas, and mineral rights at issue, with the exception of the mineral rights and surface access rights set for and conveyed in the 1958 Monahan Deed between William A. Monahan and John E. Monahan.

2. [Appellants] do not have any rights to the oil, gas, and mineral rights to the [3,062] acres at issue [] in the Quit Claim Deed.

3. [Appellants] do not have any rights to the oil and gas rights to the [] 951.6 subsurface acres described in the 1958 Monahan Deed.

4. The Sullivan County Recorder of Deeds shall strike or otherwise nullify the Quit Claim Deed dated August 11, 2016 and recorded in the Sullivan County Office of Recorder of Deeds at Instrument No. 201601573 and any references thereto from its records in order to remove the cloud to [Comerford's] rights and title to the oil, gas, and mineral rights at issue

Order, 10/4/21, at 1-2. The trial court also filed an accompanying opinion.

On October 18, 2022, Appellants filed a "Motion for Post-Trial Relief and Clarification," seeking to determine whether the trial court had found that the Monahan Deed had transferred the surface estate or limited surface rights to access the parcel in question. Appellants argued that the trial court erred in failing to find that [Comerford] had made admissions in its pleadings, answers, and discovery that John E. Monahan had been granted land in the Monahan Deed along with subsurface rights.

Appellants also argued that the trial court abused its discretion in not giving any meaning to all the clauses in the WALA Deed, specifically the language referring to the "adjoining premises of the grantor lying Northerly and Westerly of the granted premises" which Appellants claim were the 951.6 acres conveyed to John E. Monahan in the Monahan Deed in fee simple.

[Comerford] filed a responsive brief, asserting that Appellants "never put ownership of the surface estate at issue in this case other than through … their Post-Trial submissions." Response to Appellants' Motion for Post Trial Relief, at p. 4. Nevertheless, [Comerford] claimed the trial court's opinion was sufficiently clear in finding John E. Monahan's "surface rights" were limited surface rights to access the property to extract minerals. [Comerford] denied making admissions that John E. Monahan was granted the surface estate of the 951.6 acres described in the Monahan Deed.

However, [Comerford] argued that even if it did make this mistake in its pleadings, this "mistake *does not and cannot* divest the titled owner (White Ash Land Association) of the surface estate as described in the WALA Deed." Response to Appellants' Motion for Post Trial Relief, at p. 3 (emphasis in original). [Comerford] asserted that Appellants did not file a valid quiet title action as to the surface estate of the 951.6 disputed acreage as Appellants failed to add WALA as an indispensable party to the litigation.

On May 9, 2022, the trial court entered an order denying Appellants' post-trial motion with no further analysis. On June 3, 2022, Appellants purported to appeal from the trial court's order denying their post-trial motion. As the trial court had never entered judgment in favor of [Comerford], on July 22, 2022, this Court entered an order directing Appellants to *praecipe* the trial court for entry of judgment and to file with this Court's

- 7 -

Prothonotary a certified copy of the trial court docket reflecting entry of the same.[3] Appellants provided this Court with a copy of the trial court docket reflecting that judgment had been entered on July 25, 2022, thereby perfecting this Court's jurisdiction.[4]

*Comerford Family Ltd. Part. v. Ainbinder, et al.*, 849 MDA 2022 (Pa.Super. December 8, 2023) (unpublished memorandum) (footnotes omitted).

On appeal, Appellants asserted that the trial court had erred in failing to construe the operative language in the relevant deeds to find that Appellants own the 951.6 acres described in the Monahan Deed in fee simple as well as all of the remaining subsurface rights reserved by William A. Monahan in the WALA Deed (which Appellants estimate to be 3,062 acres). Comerford responded that the trial court correctly construed the plain language of the deeds to find that Comerford "is the owner of all the oil, gas, and mineral rights at issue, with the exception of the mineral rights and surface access rights set for and conveyed in the 1958 Monahan Deed."

This Court did not reach the merits of the parties' arguments, but found it necessary to remand to the trial court for the preparation of a supplemental opinion to clearly delineate the trial court's findings with respect to the parties'

---

[3] An appeal is properly taken from the entry of judgment. *See* Pa.R.A.P. 301(a) (providing that no order of court shall be appealable until it has been entered upon the appropriate trial court docket); *Johnston the Florist, Inc. v. TEDCO Const. Corp.*, 657 A.2d 511, 514 (Pa.Super. 1995) (reiterating that an appeal from an order denying post-trial motions is interlocutory).

[4] *See* Pa.R.A.P. 905(a)(5) (providing notice of appeal filed after decision but before the entry of an appealable order shall be treated as filed after such entry and on day thereof). We have changed the caption to reflect that the appeal was taken from the judgment entered on July 25, 2022.

claims as to the ownership of both the surface estate and the subsurface rights of the property at issue.

This Court noted that while the parties had stipulated before trial that the only issue at trial was the ownership of the disputed oil and gas rights, a review of the pleadings, discovery responses, and the parties' arguments at trial shows the parties had not resolved Appellants' counterclaim asserting that the Monahan Deed had conveyed to John E. Monahan the 951.6 acres of the property described in the Monahan Deed in fee simple as well as the subsurface rights excepted and reserved by William A. Monahan in the WALA Deed. Further, Comerford's pretrial pleadings did not give Appellants notice that it would dispute at trial Appellants' claim of ownership of the surface of the land described in the Monahan Deed, which Comerford claimed was conveyed to WALA. As such, this Court found the parties' stipulation did not properly frame the issues that actually were before the trial court for review.

Further, this Court noted that while the trial court's order resolved the parties' claims as to the subsurface estate of the disputed premises, the trial court's accompanying opinion contained contradictory statements with respect to the ownership of the surface estate of the land in question. *See* Trial Court Opinion (T.C.O.), 10/4/21, at 9 (stating "[a] review of the plain language of the Monahan Deed clearly demonstrates that William A. Monahan conveyed, in the granting clause, the minerals *and the surface* of the lands described in the metes and bounds within the deed"); T.C.O., 10/4/21, at 10 (stating "John

E. Monahan's chain of title only contains a portion of the "mineral" rights and *limited surface rights as described in the WALA Reservation*").

Thus, this Court remanded to the trial court to set forth its rationale and analysis detailing how it resolved Appellants' counterclaim. After remand, the trial court filed a supplemental opinion indicating that it had not addressed the ownership of the surface estate of the 951.6 acres described in the Monahan Deed as "the dispute over the surface rights was resolved by the attached Stipulation and Order dated January 21, 2014." Supplemental Opinion, 1/9/24, at 1. Based on this stipulation, which will be discussed *infra*, the trial court found that Appellants had admitted in previous litigation that WALA was the owner of the surface estate in dispute. The parties submitted briefs in response to the trial court's supplemental opinion. We may now proceed to review the merits of this appeal.

Appellants raise the following issues for our review on appeal:

A. Does an examination of the exception and reservation clause of the WALA Deed require the court to find [Appellants] received land of 951 acres and 4,045 acres of oil and gas in the Monahan Deed?

B. Does the interpretation of the recorded documents subsequent to the WALA analysis show that William Monahan intended to transfer a fee simple deed to John Monahan?

C. Does a fee simple include oil and gas?

Appellants' Supplemental Brief, at 10.

Our review is guided by the following standard and scope of review when reviewing a trial court's decision interpreting a deed:

> The Supreme Court of Pennsylvania has held that "the interpretation of the terms of a contract is a question of law for which our standard of review is *de novo* and our scope of review is plenary." **McMullen v. Kutz**, 603 Pa. 602, 985 A.2d 769, 773 (2009). Similarly, interpreting deeds presents a pure question of law; thus, "we review the trial court's construction of a deed *de novo*." **Murphy v. Karnek**, 160 A.3d 850, 859 (Pa.Super. 2017).

**Sensenig v. Greenleaf**, ___A.3d___, 876 WDA 2023, 2024 WL 4034106

(Pa.Super. Sept. 4, 2024).

> More specifically, when construing a deed,

> a court's primary object must be to ascertain and effectuate what the parties themselves intended. The traditional rules of construction to determine that intention involve the following principles. First, the nature and quantity of the interest conveyed must be ascertained from the deed itself and cannot be orally shown in the absence of fraud, accident or mistake. We seek to ascertain not what the parties may have intended by the language but what is the meaning of the words they used. Effect must be given to all the language of the instrument, and no part shall be rejected if it can be given a meaning. If a doubt arises concerning the interpretation of the instrument, it will be resolved against the party who prepared it. To ascertain the intention of the parties, the language of a deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

> ….

> [i]n the absence of fraud, accident or mistake, the nature and quantity of the real estate interest conveyed must be ascertained from the deed itself and cannot be shown by parol. When the language of the deed is clear and free from ambiguity, the intent of the parties must be determined from the language of the deed. With respect to unambiguous deeds, a court must ascertain what is the meaning of the words used, not what may have been intended by the parties as shown by parol.

**Hunnell as Tr. of Hunnell Fam. Revocable Living Tr. v. Krawczewicz**,

284 A.3d 1192, 1198 (Pa.Super. 2022) (quoting **Wright v. Misty Mountain**

**Farm, LLC**, 125 A.3d 814, 818–19 (Pa.Super. 2015) (citations omitted)).

We acknowledge that "Pennsylvania recognizes three discrete estates in land: the surface estate, the mineral [or subsurface] estate, and the right to subjacent (surface) support. Because these estates are severable, different owners may hold title to separate and distinct estates in the same land." **Bastian v. Sullivan**, 117 A.3d 338, 344 (Pa.Super. 2015) (quoting **Pennsylvania Servs. Corp. v. Texas E. Transmission, LP**, 98 A.3d 624, 629 (Pa.Super. 2014) (citations omitted)).

Appellants' claims on appeal center on their assertion that the trial court should have interpreted the deeds at issue to find Appellants received extensive surface and subsurface rights to the property at issue. Specifically, Appellants argue the trial court should have determined that the parties' joint predecessor, William A. Monahan, excepted and reserved to himself 951.6 acres of land in fee simple in the WALA Deed as well as the subsurface estate of 4,045 acres of the premises described therein. Appellants allege that William A. Monahan subsequently transferred this 951.6 acre parcel with the remaining subsurface rights to the entire parcel (which they approximate to be 3,062 acres) to Appellants' predecessor, John E. Monahan, in the 1958 Monahan Deed. Appellants' Brief at 20.[5]

_____

[5] As noted above, the trial court's initial opinion did not definitively rule on Appellants' claim that they had received surface acreage that William A. Monahan had reserved in the WALA deed and then conveyed to John E. Monahan in the Monahan deed. On remand, the trial court found that it had not discussed this issue as it found the surface ownership of the disputed premises was resolved in a stipulation entered on January 10, 2014. *(Footnote Continued Next Page)*

We disagree with Appellants' interpretation of the deeds at issue which is contrary to the plain language of the conveyances. It is undisputed that both of the parties' chains of title start with William A. Monahan, who was conveyed extensive real property from the Bernice Land Company by way of the Bernice Deed. The parties' viewpoints diverge in the interpretation of the subsequent conveyances in the 1955 WALA Deed and 1958 Monahan Deed.

---

Our review of this stipulation reveals that this agreement and judgment was entered in a separate case filed by Marilyn Monahan as well as Appellants Robert Ainbinder and Robert Barra against Commonwealth Resources, Inc. a/k/a Commonwealth Resources, Ltd., which was docketed at 2012-CV-144 ("2012 case"), in which the litigation involved a similar Complaint to Quiet Title to "an approximately 908-acre portion of [WALA's] 4,045 acres." Stipulation 2012 Case, 1/21/24, at ¶ 3. In the stipulation, Appellants Robert Ainbinder and Robert Barra admitted that WALA owned the surface of the 951.6 acre parcel described in the 1958 Monahan Deed. It does not appear that Comerford was involved in the 2012 litigation, but rather the case involved parties whose ownership claims derived from their joint predecessor, John E. Monahan.

The trial court judge in this case was the same judge that entered the judgment upon agreement of the parties in the 2012 case. This stipulation was not included in the certified record of this case prior to remand and it does not appear that the parties asked the trial court to take judicial notice of this stipulation in another case.

We point out that "[a] court may not ordinarily take judicial notice in one case of the records of another case, whether in another court or its own, even though the contents of those records may be known to the court." *d'Happart v. First Commonwealth Bank*, 282 A.3d 704, 716 (Pa.Super. 2022). On appeal, Appellants have not acknowledged, responded to, or objected to the trial court's judicial notice of the stipulation in the 2012 case.

Nevertheless, we need not determine whether this action was appropriate as the plain language of the deeds at issue support the trial court's finding that Appellants did not receive any surface acreage from their predecessor, John E. Monahan. "We are not bound by the rationale of the trial court, and may affirm on any basis." *In re Jacobs*, 15 A.3d 509, 509 (Pa.Super. 2011) (citation omitted).

We first review the 1955 WALA Deed, in which William A. Monahan, conveyed to WALA the "surface only of that certain parcel of land in the Townships of Cherry and Colley, County of Sullivan." The WALA Deed described this parcel in metes and bounds and estimated that it contained 4,045 acres of land.

Appellants claim that the trial court failed to give meaning to all the language in the exception and reservation clause of the WALA Deed, which Appellants allege established that William A. Monahan excepted and reserved a parcel of land from the 4,045 acres granted to WALA. This clause provides in relevant part:

> There is also excepted and reserved from this conveyance (a) all mineral rights and all minerals and metals and natural resources (but not including timber except as hereinafter provided) of every kind and nature lying on and under said surface, including without limitation all natural gas, petroleum, oil, coal, and iron; (b) any and all structures, buildings, equipment, fixtures, pipes, poles, cables, conduits, and other improvements, appurtenances, fixtures, and utilities now on or under said surface and now or heretofore used for mining operations thereon or thereunder or on *adjoining premises of the grantor lying Northerly and Westerly of the granted premises*. The grantor reserves for himself, his heirs and assigns the following rights:
>
> 1. The perpetual rights of ingress and egress upon, over and beneath the granted premises and to use the granted premises for the purpose of discovering, testing, drilling, mining, stripping, augering, and otherwise developing, extracting, and removing all materials and products hereinabove reserved and excepted and the further perpetual right to do all things which the grantor, his heirs and assigns in his or their sole discretion

> may deem necessary or convenient in carrying on mining operations of all kinds and activities incidental thereto both on the granted premises and *on adjoining premises of the grantor lying Northerly and Westerly of the granted premises*, all without liability for injury or damage caused or done to the granted premises or any structures, buildings, or improvements now thereon or hereafter placed thereon. …

WALA Deed, 6/16/55, at 1 (emphasis added). Appellants claim that the phrase "adjoining premises of the grantor lying Northerly and Westerly of the granted premises" transferred land to John E. Monahan which is to the North and West and is part of the WALA property. Appellants' Supplemental Brief, at 15-16. We disagree.

The plain language of this clause in the WALA Deed does not support Appellants' assertion that William A. Monahan intended to except a parcel of land from the 4,045 acres of surface estate he granted to WALA. This clause contains two sections to set forth what William A. Monahan "excepted and reserved from this conveyance."[6] First, in section (a), William A. Monahan

---

[6] Though not a disputed issue in this case, we acknowledge that the "terms 'exception' and 'reservation' have been used interchangeably in deeds." **Hunnell**, 284 A.3d at 1198 (citing **Walker v. Forcey,** 151 A.2d 601, 606 (Pa. 1959)). Our courts have clarified that:

> A reservation pertains to incorporeal things that do not exist at the time the conveyance is made. [**Walker**, 151 A.2d at 606]. **See Lauderbach–Zerby Co. v. Lewis**, 283 Pa. 250, 129 A. 83, 84 (1925) (reservation is creation of a right or interest that did not exist prior to grant). However, even if the term "reservation" is used, if the thing or right reserved is in existence, then the language in fact constitutes an exception. **Walker**, 151 A.2d at 606; **Silvis v. Peoples Natural Gas Co.,** 386 Pa. 453, 126 A.2d

*(Footnote Continued Next Page)*

excepted and reserved "mineral rights and all minerals and metals and natural resources … including without limitation all natural gas, petroleum, oil, coal, and iron." Second, in section (b), William A. Monahan excepted and reserved "any and all structures, buildings, equipment, fixtures, pipes, poles, cables, conduits, and other improvements, appurtenances, fixtures, and utilities now on or under said surface and now or heretofore used for mining operations thereon or thereunder or on adjoining premises of the grantor lying Northerly and Westerly of the granted premises."

The plain language of this clause shows that William A. Monahan excepted and reserved the subsurface estate of the 4,045 acres, which was defined as all minerals, metals, and natural resources (including oil and gas), as well as the structures, buildings, equipment, and related items on or under the surface of the property conveyed to WALA that William A. Monahan would use for mining operations.

Further, following the clause in the WALA deed in which William A. Monahan reserved the subsurface estate of the granted premises, the WALA deed includes a subsection in which William A. Monahan created a subsection in which he "reserve[d] for himself, his heirs and assigns *the following rights*," which included the 1) "perpetual rights of ingress and egress upon, over and

_____

706, 708 (1956) (where no new rights are created, language treated as exception).

*Hunnell*, 284 A.3d at 1198 (quoting *Ralston v. Ralston*, 55 A.3d 736, 741-42 (Pa.Super. 2012).

- 16 -

beneath the granted premises, 2) the right "to use the granted premises for the purpose of … developing, extracting, and removing all materials, and products hereinabove reserved and excepted" and 3) the "perpetual right to do all things which the grantor, his heirs and assigns in his or their sole discretion may deem necessary or convenient in carrying on mining operations of all kinds and activities incidental thereto both on the granted premises and on adjoining premises of the grantor lying Northerly and Westerly of the granted premises, all without liability for injury or damage caused or done to the granted premises." WALA Deed, 6/16/55, at 1 (emphasis added).

The plain language of this subsection shows that William A. Monahan was delineating specific rights that he would retain that would allow him to effectively access and use the granted property to extract and remove all the subsurface resources that he excepted and reserved.

We reject Appellants' claim that the phrase "on adjoining premises of the grantor lying Northerly and Westerly of the granted premises" showed William A. Monahan's intent to transfer a parcel of land to John E. Monahan. That particular phrase simply modifies the mining operations that William A. Monahan planned to pursue on the granted property as well as property of the grantor that was adjacent to the granted premises. The plain language of this phrase shows that William A. Monahan was clarifying that he intended to reserve the right to use the granted premises in any way he deemed necessary or convenient to facilitate mining operations on the granted premises as well as on property of the grantor that was adjacent to the granted premises.

- 17 -

The language of 1955 WALA Deed clearly shows that William A. Monahan granted the entire surface estate of the 4,045 acres to WALA, but included a detailed exception of the subsurface estate (which specifically included rights to "all minerals and metals and natural resources … including without limitation all natural gas, petroleum, oil, coal, and iron") for himself and his heirs and assigns. There was no need to identify the property described in the WALA Deed that was "Northerly and Westerly" of the granted premises, as the WALA Deed clearly identified the surface estate that was conveyed to WALA as well as the subsurface estate and related rights that William A. Monahan reserved for himself.

Turning to the subsequent 1958 Monahan Deed, we also find the plain language of this conveyance supports the trial court's finding that Appellants' predecessor, John E. Monahan, only received limited mineral and surface rights in this deed. As noted above, the granting clause of the Monahan Deed conveyed to John E. Monahan "all of the *mineral and surface rights* of the grantor in, to, and upon the following described premises." Monahan Deed, at 1 (emphasis added). The Monahan Deed identifies this parcel with the following language:

> The said premises are part of the premises conveyed to William A. Monahan by Bernice Land Corporation by deed dated June 14, 1955 … and the mineral and surface rights herein conveyed are part of those reserved by the grantor in deed to White Ash Land Association dated June 16, 1955…

Monahan Deed, at 1. The parties agree that the "described premises" which is identified in metes and bounds, contains approximately 951.6 acres and is a part of the land granted to WALA in the WALA Deed.[7]

First, the Monahan Deed's conveyance of the "surface rights of the grantor" did not convey any surface estate to John E. Monahan. The only surface rights that the grantor William A. Monahan possessed that he could convey to John E. Monahan were those limited rights that he retained that were delineated in the WALA Deed to allow William A. Monahan to access and use the property to extract and remove the minerals and natural resources that he had excepted and reserved in the WALA Deed.

Second, we agree with the trial court's assessment that this language in the Monahan Deed conveying the grantor's "mineral" rights to John E. Monahan did not include oil and gas rights. In Pennsylvania, our courts have established that "absent the terms 'oil' or 'natural gas' being included within a reservation for mineral rights within a private deed, oil or natural gas simply are not encompassed within the reservation without clear and convincing parol evidence produced by the proponent of the reservation to the contrary." **Butler v. Charles Powers Est. ex rel. Warren**, 620 Pa. 1, 19–20, 65 A.3d 885, 896 (2013) (citing **Highland v. Commonwealth**, 400 Pa. 261, 11 A.2d

---

[7] Prior to remand, Appellants claimed the Monahan Deed conveyed to John E. Monahan a 951.6 acre parcel of land *outside* of the land conveyed to WALA in the WALA Deed. While Appellants seem to have abandoned this argument on appeal, we note it has no merit. The Monahan Deed conveys "mineral and surface rights" that were "part of those reserved by the grantor in deed to White Ash Land Association dated June 16, 1955 [(the WALA deed)].

390, 398 (1960); ***Dunham & Shortt v. Kirkpatrick***, 101 Pa. 36 (Pa. 1882)). In other words, "if, in connection with a conveyance of land, there is a reservation or an exception of 'minerals' without any specific mention of natural gas or oil, ... the word 'minerals' was not intended by the parties to include natural gas or oil." ***Highland***, 400 Pa. at 276, 11 A.2d at 398 (citing ***Dunham***, 101 Pa. at 44).

The aforementioned doctrine has been reaffirmed by our Supreme Court as the ***Dunham*** Rule and further explained as follows:

> The ***Dunham*** Rule is clear, dating back to ***Gibson*** [***v. Tyson***, 5 Watts 34 (Pa. 1836)]*,* that the common, layperson understanding of what is and is not a mineral is the only acceptable construction of a private deed. Notwithstanding different interpretations proffered by other jurisdictions, the rule in Pennsylvania is that natural gas and oil simply are not minerals because they are not of a metallic nature, as the common person would understand minerals. ***Gibson***, 5 Watts at 41–42; ***see also Dunham***, 101 Pa. at 44. The ***Highland*** decision made clear that the party advocating for the inclusion of natural gas within the deed reservation (here Appellees) bears the burden of pleading and proving by clear and convincing evidence that the intent of the parties who executed the reservation was to include natural gas. 161 A.2d at 398–99. Critically, however, such intention may only be shown through parol evidence that indicates the intent of the parties at the time the deed was executed—in this case, 1881. ***Id.***

***Butler***, 620 Pa. at 22–23, 65 A.3d at 898. In ***Highland***, this Court extended the ***Dunham*** rule to circumstances in which the term "minerals" appears in a granting clause, reiterating that there is a presumption that "natural gas or oil is not included within the word 'minerals.'" ***Highland***, 400 Pa. at 276-77, 11 A.2d at 398-99.

- 20 -

In the 1958 Monahan deed, William A. Monahan granted "mineral and surface rights" to John E. Monahan without any specific mention of oil and gas rights. This language is contrasted with the previous 1955 WALA Deed in which William A. Monahan carefully with specificity made a reservation and exception unto himself of subsurface rights, in which he distinguished the categories of minerals, metals, and natural resources, and explicitly included oil and gas rights in this reservation. William A. Monahan clearly understood the significance of these terms in making a detailed reservation and exception of subsurface rights.

While William A. Monahan could have included the same language in the 1958 Monahan Deed three years later to clarify that he was conveying John E. Monahan the entire subsurface estate of the 951.6 acre property described in the Monahan Deed, he chose not to use this language, but instead limited the conveyance to a grant of "mineral and surface rights." Further, the certified record does not contain clear and convincing parol evidence to show that William A. Monahan actually intended to convey to John E. Monahan the entire subsurface estate of the 951.6 acre parcel.

Accordingly, we conclude that the trial court did not err in determining that Comerford (through its predecessor William A. Monahan) is the rightful owner of all the oil, gas, and mineral rights of the 4,045 acres estate described in the 1955 WALA Deed, with the exception of the limited mineral rights and surface access rights conveyed in the 1958 Monahan Deed between William A. Monahan and John E. Monahan, which belong to Appellants. Appellants

have not shown that they have (1) any oil and gas rights to the 951.6 acre subsurface estate described in the Monahan Deed, (2) any claim to the oil, gas, or mineral rights to the approximate 3,062 acres at issue in the Quitclaim Deed, or (3) any ownership rights to the surface estate for the premises in question.

For the foregoing reasons, we affirm the trial court's quiet title judgment.

Judgment affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/14/2024